1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10
11   THE MORNING STAR PACKING              No. 2:09-cv-00208-MCE-EFB
     COMPANY, et al.,
12
              Plaintiffs,
13
         v.                               MEMORANDUM AND ORDER
14
     SK FOODS, L.P., et al.,
15
              Defendants.
16
17                          ----oo0oo----

18
19        Presently before the Court is a Motion by Defendants Ingomar

20   Packing Company, Greg Pruett, Los Gatos Tomato Products, and

21   Stuart Woolf ("Defendants") to dismiss the claims alleged against

22   them in the First Amended Complaint ("Complaint") of Plaintiffs

23   The Morning Star Packing Company, Liberty Packing Company, LLC,

24   California Fruit & Tomato Kitchens, and The Morning Star Company

25   ("Plaintiffs") for failure to state a claim upon which relief may

26   be granted pursuant to Federal Rule of Civil Procedure Rule

27   12(b)(6).  For the reasons set forth below, Defendants' Motion

28   is granted in part and denied in part.

                                   1

**BACKGROUND**[1]

Plaintiffs are in the business of processing raw tomatoes into processed tomato products.  Defendants are also in the processed tomato products business, and are direct competitors of Plaintiffs.  The tomato goods sold by Plaintiffs and Defendants are purchased by large corporations, such as Kraft Foods, Agusa, B&G Foods, and Safeway.  Companies wishing to purchase processed tomato products utilize purchasing agents to handle transactions between the company and the processor.  These agents, known as customers' purchasing agents, are typically employees of the purchasing company.  In the processed tomato industry, goods are typically sold by tomato processors submitting bids to customers' purchasing agent.

In 2006, Defendants and Co-Defendant SK Foods[2], who is also in the business of processing tomatoes, formed a partnership named CTEG.  The purported purpose of this venture was to promote the export of processed tomato products overseas.  Plaintiffs allege that the real purpose of the partnership was for their members to agree and collude on domestic prices for the sale of their products.  Plaintiffs claim that in 2005, prior to forming CTEG, Defendants and SK Foods made several anticompetitive agreements.

///

---

[1] The factual assertions in this section are based on the allegations in Plaintiffs' First Amended Complaint unless otherwise specified.

[2] SK Foods is a defendant named in the Complaint, but is not a moving party to the motion presently before the Court.

1  Defendants agreed to, among other things, fix prices for tomato

2  paste and diced tomatoes, and to allocate customers by not

3  competing for customers with whom other CTEG members had long-

4  standing business relationships.[3]

5      In addition to price fixing and allocating customers,

6  Plaintiffs also claim that Defendants and SK Foods made bribe

7  payments to customers' purchasing agents.  These alleged bribes

8  were paid by Defendants and SK Foods to ensure that SK Foods'

9  submitted bids would be the winning bids for contracts for the

10 sale of processed tomato products.  SK Foods also allegedly paid

11 bribes to purchasing agents in exchange for information regarding

12 bids submitted by competitors of Defendants and SK Foods,

13 including bid information submitted by Plaintiffs.  The acquired

14 bid information was shared with Defendants who utilized this

15 information in preparing their own bids.  As a result of these

16 practices, Plaintiffs claim that they were unable to compete for

17 contracts and were not awarded contracts they otherwise would

18 have been awarded.

19

20                          **STANDARD**

21

22     A party may seek dismissal of a claim if the pleadings are

23 insufficient because they fail to state a claim upon which relief

24 may be granted.

25 ///

26 _____

27     [3] For lack of a better term, Defendants' agreement not to
   compete for the business of customers having long-standing
28 business relationships with other CTEG members is referred to as
   "allocating customers."

3

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the...claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) ("[T]he pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."). If the "plaintiffs...have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570.

///

///

///

///

4

1　　　Once the court grants a motion to dismiss, they must then

2　decide whether to grant a plaintiff leave to amend. Rule 15(a)

3　authorizes the court to freely grant leave to amend when there is

4　no "undue delay, bad faith, or dilatory motive on the part of the

5　movant." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). In fact,

6　leave to amend is generally only denied when it is clear that the

7　deficiencies of the complaint cannot possibly be cured by an

8　amended version. <u>See</u> <u>DeSoto v. Yellow Freight Sys., Inc.</u>,

9　957 F.2d 655, 658 (9th Cir. 1992); <u>Balistieri v. Pacifica Police</u>

10　<u>Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990) ("A complaint should not

11　be dismissed under Rule 12(b)(6) unless it appears beyond doubt

12　that the plaintiff can prove no set of facts in support of his

13　claim which would entitle him to relief.") (internal citations

14　omitted).

15

16　　　　　　　　　　　　　　　**ANALYSIS**

17

18　　　Plaintiffs contend that Defendants' conduct is unlawful

19　under the Sherman Act, the Racketeering Influenced and Corrupt

20　Organizations Act ("RICO"), California Common Law Unfair

21　Competition, and California Business and Professions Code § 17000

22　*et seq.*[4] The issue presently before the court is whether

23　Plaintiffs' Complaint contains sufficient factual allegations to

24　survive a motion to dismiss pursuant to 12(b)(6). <u>See</u> <u>supra</u>.

25　///

26　

27　　　[4] Plaintiffs' Complaint also contains a cause of action for
violation of the Robinson-Patman Act, 15 U.S.C. § 13(c). This
28　cause of action is not brought against the moving Defendants and
therefore is not at issue.

1    **A.    Sherman Act**

2

3         Plaintiffs allege that Defendants violated the Sherman Act

4    by engaging in price fixing, allocating customers, bribery, and

5    bid rigging.  15 U.S.C. § 1 prohibits all agreements that

6    unreasonably restrain trade.  Leegin Creative Leather Prod., Inc.

7    v. PSKS, Inc., 551 U.S. 877, 885 (2007).  The general method of

8    analysis for determining whether an agreement is unreasonable,

9    and thus a violation of the Sherman Act, is the "rule of reason"

10   analysis.  Cal. ex rel. Brown v. Safeway, Inc., 615 F.3d 1171,

11   1178 (9th Cir. 2010).  Under the rule of reason analysis, the

12   fact finder weighs all circumstances of the case to determine

13   whether the agreement at issue was an unreasonable restraint on

14   competition.  Leegin, 551 U.S. at 885.

15        To have standing to bring a cause of action under 15 U.S.C.

16   § 1, a plaintiff must demonstrate that he or she suffered an

17   "antitrust injury."  Big Bear Lodging Ass'n v. Snow Summit, Inc.,

18   182 F.3d 1096, 1102 (9th Cir. 1999).  An antitrust injury is an

19   "injury of the type the antitrust laws were intended to prevent

20   and that flows from that which makes defendants' acts unlawful."

21   Id. (quoting Atlantic Richfield Co. v. USA Petroleum Co.,

22   495 U.S. 328, 334 (1990)).  The injury suffered must be

23   attributable to an anticompetitive aspect of the alleged

24   practice.  Big Bear, 182 F.3d at 1102.

25        Defendants first argue that Plaintiffs' cause of action

26   under the Sherman Act should be dismissed because Plaintiffs do

27   not sufficiently allege an antitrust injury as a result of

28   Defendants alleged price fixing.

6

Second, Defendants assert that the Complaint fails to provide
facts plausibly suggesting that Defendants participated in the
alleged bribery scheme.

### 1.    Antitrust Injury

Specifically, Defendants contend that Plaintiffs would have
stood to gain from Defendants' alleged price fixing practices
and, therefore, Plaintiffs did not suffer an antitrust injury.
Where a plaintiff is a competitor to, rather than a customer of,
a defendant alleged to have engaged in price fixing, the
plaintiff will not have suffered an antitrust injury deriving
from the fixing of prices. Big Bear, 182 F.3d at 1102.
Inflated prices resulting from price fixing would not only
benefit the defendant, it would also benefit the defendant's
competitors. Id.

Here, Plaintiffs and Defendants are direct competitors.  Any
price fixing by Defendants would result in inflated prices for
goods not only sold by Defendants, but also the processed tomato
goods sold by Plaintiffs.  Rather than causing harm to
Plaintiffs, inflated prices for processed tomato goods would
likely confer a benefit.  Plaintiffs, therefore, cannot show an
antitrust injury deriving solely from Defendants' alleged price
fixing practices.

While the Court does agree with Defendants that Plaintiffs
have not demonstrated an antitrust injury caused by price fixing,
Plaintiffs have sufficiently plead an antitrust injury resulting
from other alleged anticompetitive conduct.

Contrary to Defendants reading of the Complaint, Plaintiffs do not merely allege a conspiracy to "fix the prices of Processed Tomato Products" (Defs.' Reply In Supp. Mot. To Dismiss, p. 2) (internal quotations omitted).  Plaintiffs allege that Defendants engaged in a variety of anticompetitive conduct, including bribery, bid rigging, and allocating customers.

Defendants aver that even if the Complaint sufficiently alleges that they participated in bid rigging and allocation of customers, which the Complaint clearly alleges, these allegations fail for the same reason as the price fixing allegation; the effect of these anticompetitive practices is to inflate prices paid by customers.  Defendants' reasoning is flawed because it overlooks the fact that this type of conduct, unlike price fixing, can injure both customers and competitors.  For example, bid rigging not only causes customers to pay more than they would have otherwise paid in a competitive market[5], but it can also result in a competitor being outbid on a contract they would have otherwise been awarded.

In their Complaint, Plaintiffs allege that SK Foods and Defendants paid bribes to customers' purchasing agents to acquire bid information of its competitors.  The Complaint claims that SK Foods shared this bid information with Defendants, who utilized the bid information in submitting bids.  As a result, Plaintiffs were unable to secure contracts they would have otherwise been awarded.

---

[5] For example, an entity utilizing the bid information of its competitors can ensure that its bid is the lowest submitted, while securing maximum profit by never submitting a bid lower than necessary.

1  These factual allegations are sufficient to show that Plaintiffs

2  suffered an antitrust injury attributable to Defendants alleged

3  anticompetitive conduct, and enough to sustain a 12(b)(6) motion.

4

5                    **2.   Sufficiency of Bribery Allegations**

6

7       Defendants also argue that the Complaint, while containing

8  facts showing SK Foods paid bribes, fails to implicate Defendants

9  as participants in the bribery scheme.  Although the majority of

10 the allegations involving bribery focus on the conduct of SK

11 Foods, the Complaint specifically alleges that Defendants paid

12 bribes to customers' purchasing agents to ensure that SK Foods

13 would win bids.[6]  (Complaint ¶ 98).  It also alleges that

14 Defendants, SK Foods, and other defendants named in the Complaint

15 benefitted from these bribes by learning information about

16 competitors' bids, including bid information submitted by

17 Plaintiffs.  Plaintiffs further claim that the bid information

18 obtained through bribes was used by Defendants in submitting

19 their bids to customers.  These facts are sufficient to provide

20 Defendants with notice of the conduct Plaintiffs allege to be a

21 violation of the Sherman Act.

22 ///

23 ///

24 _____

25      [6] Paragraph 98 of Plaintiffs' Complaint states that
   "Defendants and the co-conspirators ensured that Sk Foods' bids

26 (and possibly the bids of Ingomar and Los Gatos) would be the
   winning bids by paying illegal bribes to the purchasing agents."

27 Defendants Ingomar, Los Gatos, Pruett, and Woolf are included in
   the definition of "defendants" as the term is used in the
   Complaint.  Accordingly, paragraph 98 alleges that Defendants

28 paid bribes to purchasing agents.

Finding that Plaintiffs have plead an antitrust injury and provided adequate factual allegations of Defendants' participation in bid rigging and bribery, Defendants' Motion to Dismiss Plaintiffs' cause of action brought under the Sherman Act is denied.

**B.   RICO Claims**

RICO permits "[a]ny person injured in his business or property" by a RICO violation to bring a private right of action. Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1146 (9th Cir. 2008).  Plaintiffs allege that Defendants violated RICO statutes 18 U.S.C. § 1962(c) and (d).  Subsection (c) "prohibits a person employed by or associated with any enterprise engaged in interstate commerce to conduct or participate in the conduct of the enterprise through a pattern of racketeering activity."  Id. at 1446.  Subsection (d) prohibits conspiracy to violate subsection (c).  "To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Walter v. Drayson, 538 F.3d 1244, 1247 (9th Cir. 2008) (quoting Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007)).

To succeed on a civil RICO claim, a plaintiff must also show that the defendant's RICO violation proximately caused plaintiff's injury.  Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 981 (9th Cir. 2008) (citing Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 265-66 (1992)).
///

The Ninth Circuit has formulated non-exhaustive factors for determining whether a defendant's RICO violation was the proximate cause of a plaintiff's injury.  These factors include:

> "(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries."

Sybersound, 517 F.3d at 1148 (quoting Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1168-69 (9th Cir. 2002).

The central question for evaluating proximate cause under a RICO claim is whether the alleged violation led directly to the harm suffered.  Anza v. Ideal Supply Corp., 547 U.S. 451, 461 (2006).  "The requirement of [a] direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims."  Id. at 460.

Here, the immediate victims of Defendants' alleged conduct are the purchasers of processed tomato products who were forced to pay higher prices, not Plaintiffs.  See id. at 458 (state that was defrauded and lost tax revenue was direct victim, not competitor who suffered unfair disadvantage).  Currently pending before this Court are two class actions brought on behalf of direct and indirect purchasers of processed tomato products.[7]
///

----

[7]  See Four in One Co., Inc. v. SK Foods, L.P., No. 2:08-cv-03017-MCE-EFB; L'Ottavo Ristorante v. Ingomar Packing Co., No. 2:09-cv-01945-MCE-EFB.

1  Given that the more immediate victims are pursuing their own

2  claims, a direct causal connection is needed.  See Sybersound,

3  517 F.3d at 1149.

4      Plaintiffs have failed to provide facts in their Complaint

5  showing that Defendants' conduct directly led to their alleged

6  injuries.  Plaintiffs simply conclude that as a direct and

7  proximate result of Defendants' conduct, Plaintiffs were unable

8  to compete for contracts for the sale of tomato goods and lost

9  sales to customers.  (Complaint ¶¶ 116, 121.)  The Complaint does

10 not allege that Plaintiffs and Defendants competed for the same

11 contracts by submitting bids to the same customer.  Even if the

12 parties did submit bids for the same contract, there are no facts

13 indicating that Plaintiffs would have secured a contract in the

14 absence of Defendants' alleged conduct.  Plaintiffs could have

15 failed to secure contracts for a number of reasons unconnected to

16 Defendants' alleged RICO violation (i.e. submitting uncompetitive

17 bids).  See Anza, 547 U.S. at 458,  James Cape & Sons Co. v. PPC

18 Constr. Co., 453 F.3d 399, 403 (7th Cir. 2006).

19     Based on the allegations contained in the Complaint, the

20 Court cannot find any facts supporting Plaintiffs' conclusion

21 that their injuries were the direct and proximate result of

22 Defendants' alleged RICO violation.  Defendants' Motion to

23 Dismiss Plaintiffs' RICO claims is granted.[8]

24 ///

25

26      [8] Defendants also argue that Plaintiffs' RICO claims should
   be dismissed for failure to sufficiently allege Defendants
27 violation of predicate acts.  Although the Court is troubled by
   the lack of factual allegations showing a violation of the
   requisite number of predicate acts, the Court need not address
28 this issue to reach its disposition.

1        **C.    California Common Law Unfair Competition**

2

3        Under California Law, "[t]he common law tort for unfair

4   competition is generally thought to be synonymous with the act of

5   'passing off' one's good as those of another." <u>Sybersound</u>,

6   517 F.3d at 1153 (quoting <u>Bank of the W. v. Superior Court</u>,

7   2 Cal. 4th 1254, 1263 (1992).  Plaintiffs contends that

8   California common law has since been expanded to provide

9   protection against other unfair competitive practices.  Although

10  there has been expansion of unfair competition law in California,

11  the expansion, rather than occurring through the common law, has

12  primarily been in statute.  <u>Bank of the W.</u>, 2 Cal. 4th at 1263.

13       Plaintiffs have not alleged that Defendants passed off their

14  goods as those of another, which is required to bring an unfair

15  competition claim under California common law.  <u>Sybersound</u>,

16  517 F.3d at 1153.  Accordingly, Plaintiffs have failed to allege

17  a Common Law Unfair Competition claim.  Defendants' Motion to

18  Dismiss Plaintiffs' Common Law Unfair Competition claim is

19  granted.

20

21       **D.    California Unfair Competition Law**

22

23       Plaintiffs' last claim seeks to enjoin Defendants from

24  engaging in all wrongful conduct alleged in the Complaint,

25  including commercial bribery, conspiracy to commit commercial

26  bribery, price fixing, and other unfair and fraudulent business

27  practices prohibited by California's Unfair Competition Law

28  (UCL), California Business & Professions Code § 17200 *et seq.*

13

1   A party injured by a violation of the UCL may only seek

2   restitution and injunctive relief.  Cal. Bus. & Profs. Code

3   § 17203.  Defendants contend that Plaintiffs have not established

4   that they have Article III standing to seek injunctive relief.[9]

5        A plaintiff bears the burden of establishing "that he has

6   standing for each type of relief sought."  Summers v. Earth

7   Island Inst., 129 S. Ct. 1142, 1149 (2009).  In order to show

8   Article III standing for injunctive relief, a plaintiff must

9   demonstrate the existence of an "imminent and actual" threat of

10  injury that is "not conjectural and hypothetical."  Id.  "Past

11  exposure to harmful or illegal conduct does not necessarily

12  confer standing to seek injunctive relief if the plaintiff does

13  not continue to suffer adverse effects."  Mayfield v. U.S.,

14  599 F.3d 964, 970 (9th Cir. 2010) (citing Lujan v. Defenders of

15  Wildlife, 504 U.S. 555, 560 (1992)).  "Once a plaintiff has been

16  wronged, he is entitled to injunctive relief only if he can show

17  that he faces a 'real or immediate threat ... that he will again

18  be wronged in a similar way.'"  Mayfield, 599 F.3d at 970

19  (quoting City of L.A. v. Lyons, 461 U.S. 95, 111 (1983)).

20       In requesting injunctive relief, Plaintiffs claim that

21  Defendants were the proximate cause of Plaintiffs' injuries, and

22  that Defendants should be enjoined in the future from engaging in

23  any acts of unfair competition.  (Complaint ¶ 126.)

24  ///

25  ///

26

27       [9] The parties do not dispute that Plaintiffs are not
    entitled to restitution.  (Pls.' Opp'n to Defs.' Mot. to Dismiss,
28  p. 22, n. 14.)

14

The Complaint, however, is devoid of any facts indicating that Defendants are likely to continue utilizing unfair competition practices.  Plaintiffs also fail to allege that they face a future harm similar to that which they have already allegedly suffered.  Based on the facts provided in their Complaint, Plaintiffs have not satisfied their burden of establishing standing to pursue injunctive relief.  Thus, Defendants' Motion to Dismiss Plaintiffs' claim brought pursuant to California Business & Professions Code § 17200 *et seq* is granted.

**CONCLUSION**

Accordingly, Defendants' Motion to Dismiss (ECF No. 108) is hereby GRANTED with leave to amend as to Plaintiffs' Third, Fourth, and Fifth Causes of Action brought against Defendants Ingomar Packing Company, Greg Pruett, Los Gatos Tomato Products, and Stuart Woolf.  Defendants' Motion to Dismiss Plaintiffs' Second Cause of Action for violation of the Sherman Act is DENIED.[10]

///

///

///

///

///

///

---

[10] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

15

1    Plaintiffs may file an amended complaint not later than
2    twenty (20) days after the date this Memorandum and Order is
3    filed electronically.  If no amended complaint is filed within
4    said twenty (20)-day period, without further notice, Plaintiffs'
5    Third, Fourth, and Fifth Causes of Action brought against
6    Defendants Ingomar Packing Company, Greg Pruett, Los Gatos Tomato
7    Products, and Stuart Woolf will be dismissed without leave to
8    amend.
9        IT IS SO ORDERED.
10   Dated: November 16, 2010
11
12
13                          _____
                            MORRISON C. ENGLAND, JR.
14                          UNITED STATES DISTRICT JUDGE
15
16
17
18
19
20
21
22
23
24
25
26
27
28