BINGHAM MCCUTCHEN LLP
STEPHEN ZOVICKIAN (SBN 78697)
stephen.zovickian@bingham.com
COLIN WEST (SBN 184095)
colin.west@bingham.com
SUJAL J. SHAH (SBN 215230)
sujal.shah@bingham.com
Three Embarcadero Center
San Francisco, California 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286

Attorneys for Defendant
INGOMAR PACKING COMPANY

RAMSEY & EHRLICH LLP
MILES EHRLICH (SBN 237954)
miles@ramsey-ehrlich.com
803 Hearst Avenue
Berkeley, CA 94710
Telephone: (510) 548-3600
Facsimile: (510) 291-3060

Attorneys for Defendant
GREGORY R. PRUETT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| THE MORNING STAR PACKING COMPANY, a California limited partnership; et. al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>SK FOODS, L.P., a California limited partnership; et. al.,<br><br>            Defendants. | CASE NO. 2:09-CV-00208-KJM-EFB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANTS INGOMAR PACKING COMPANY AND GREGORY R. PRUETT FOR PARTIAL SUMMARY JUDGMENT OR FOR AN ORDER PURSUANT TO THE COURT'S INHERENT AUTHORITY**<br><br>Date: November 21, 2014<br>Time: 10:00 a.m.<br>Place: Courtroom 3<br>Judge: Hon. Kimberly J. Mueller |

1

## I. INTRODUCTION

Defendants Ingomar Packing Company and Gregory R. Pruett (collectively "Ingomar"), the leniency applicants in a related criminal proceeding, move for partial summary judgment, or for an order under the Court's inherent authority, establishing that the strict limitation on damages afforded to leniency applicants under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA") applies to *all* claims in this action, including Plaintiffs' RICO claims.

As this Court has observed, the "backdrop of this litigation is the FBI's investigation of defendant SK Foods and Scott Salyer, its owner, for alleged price-fixing and bribery in the processed tomato product industry." Order Denying Defendants Motion to Dismiss Second Amended Complaint ("Order") (Dkt. 130) at 1. In the summer of 2008, as part of that investigation, Ingomar self-reported its conduct and was granted a leniency agreement with the Department of Justice's Antitrust Division ("Antitrust Division"), which obligated Ingomar to continue cooperating in the criminal investigation. Defendants' Statement of Undisputed Facts 3 ("SUF"); *see also* Affidavit of Stephen Zovickian ("Zovickian Aff."), Exh. 1 (Leniency Agreement) at 1; *Four in One Co., Inc. v. SK Foods, L.P.*, 2014 U.S. Dist. LEXIS 601, *7 (E.D. Cal. January 2, 2014) ("defendants Greg Pruett and Ingomar Packing Company were accepted into the U.S. Department of Justice's amnesty program for their cooperation in the criminal investigation under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ('ACPERA')").

Under the Antitrust Division's leniency program, the first company that voluntarily reports its own improper conduct to the Department of Justice can obtain immunity from prosecution for itself and its executives and employees. Request for Judicial Notice ("RJN") No. 1 (U.S. Department of Justice Corporate Leniency Policy). The Antitrust Division's leniency

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY INGOMAR DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT OR FOR AN ORDER PURSUANT TO THE COURT'S INHERENT AUTHORITY
CASE NO. 2:09-CV-00208-KJM-EFB

agreements apply not only to the antitrust violation being self-reported, but also to "such *additional offenses that are committed in connection with* the antitrust violation," such as "brib[ing] a purchasing agent to steer contracts . . . in connection with a bid-rigging scheme." RJN No. 2 (Department of Justice, *Frequently Asked Questions Regarding the Antitrust Division's Leniency Program and Model Leniency Letter*) ¶6 ("DOJ FAQ") (emphasis added).

ACPERA, in turn, caps the amount of any damages that may be recovered from the "leniency applicant" and "cooperating individuals" in any related civil lawsuit.  ACPERA, Pub. L. No. 108-237, § 213, 118 Stat. 661, 666 (2004).  In particular, ACPERA states that "in *any civil action* alleging a violation of section 1 or 3 of the Sherman Act … *based on conduct covered* by a currently effective antitrust leniency agreement," damages are limited to only the "portion of the actual damages sustained by the claimant which is attributable to the commerce done by the applicant."  ACPERA § 213(a) (emphasis added).  To obtain this cap on damages, the leniency applicant must "provide[] satisfactory cooperation to the claimant with respect to the civil action…."  *Id*. at § 213(b).

After entering into the leniency agreement, Ingomar continued not only to cooperate with the Antitrust Division, but it also offered its cooperation to Plaintiffs, in accordance with its ACPERA obligations.  Plaintiffs accepted this cooperation, and have continued to request and accept further cooperation from Ingomar as this case has progressed.  And from the beginning, the allegations of the complaint have made explicit the Plaintiffs' view that the alleged RICO offenses were committed "in connection with" the antitrust violation, as the Department of Justice has defined that phrase. *See* DOJ FAQ No. 6, at RJN No. 2.

But recently, after accepting this extensive cooperation from Ingomar, Plaintiffs have expressed the view that ACPERA's limitation on damages does *not* apply to their RICO claims. *See* Zovickian Aff. ¶¶ 2-5 and SUF Nos. 5-10.  Thus, Plaintiffs purport to seek treble damages

3

(and joint and several liability) from Ingomar in this action – even though Plaintiffs' RICO claims are *based on the same conduct as their antitrust claim*, and *all of the conduct underlying both the RICO and antitrust claims is covered by Ingomar's leniency agreement*. SUF Nos. 1, 2 and 4; *see also* Second Amended Complaint (Dkt. No. 116) ¶¶ 107, 125 (incorporating each preceding paragraph, including all paragraphs related to Plaintiffs' Sherman Act claim, into the RICO claims).

Plaintiffs' legal position is contrary to the plain language of ACPERA. It also undermines the express purpose of the statute, conflicts with the Antitrust Division's authoritative interpretation of its own leniency agreements, and contravenes ACPERA's legislative history. Allowing Plaintiffs to seek treble damages and joint and several liability for their RICO claims would not only put Ingomar in an untenable position moving forward; it would also eviscerate a fundamental benefit Congress provided to companies to incentivize them to self-report criminal conduct under the Antitrust Division's leniency program. To allow such a precedent would frustrate the aims of a vitally important statute and cripple the federal government's efforts to ferret out, and prosecute, criminal antitrust offenses in the future.

Ingomar therefore requests a ruling that ACPERA's limitation on damages applies to <u>all</u> claims alleged in this action, on the grounds that (a) the alleged RICO offenses were committed "in connection with" the antitrust violation, (b) the same alleged conduct forms the basis of all claims, and (c) this alleged conduct is covered by the leniency agreement with the Antitrust Division.[1] Ingomar requests that the Court resolve this legal issue either under Rule 56 or under its broad and inherent power to regulate litigation before it.

---

[1] The limitation on damages only applies after a court determines that the leniency applicant has "provided satisfactory cooperation to the claimant with respect to the civil action." Pub. L. No. 108-237, § 213(b), 118 Stat. 661, 666 (June 22, 2004). Ingomar is not asking the Court to decide *now* that its cooperation has been satisfactory; rather, we ask the Court to rule as

4

## II. LEGAL STANDARD

A court may grant summary judgment upon all – or part – of a claim or defense. Fed. R. Civ. P. 56(a), (b). Partial summary judgment is resolved under the same standard as a motion for summary judgment. *See California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998); *N. View Estates, GP v. Yreka Holdings, II*, 2:08-CV-02230JAMGGH, 2010 WL 234851 (E.D. Cal. Jan. 14, 2010). "Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment under the legal principles that govern the case at issue." *Moreland v. Las Vegas Metro. Police Dept.*, 159 F.3d 365, 369 (9th Cir. 1998). "Questions of statutory construction and legislative history present legal questions which are properly resolved by summary judgment." *Coyote Valley Band of Pomo Indians v. United States*, 639 F. Supp. 165, 167 (E.D. Cal. 1986). Summary judgment procedure is "an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The court has broad and inherent power to make pretrial determinations to regulate the litigation before it. *See In re N. Dist. of California Dalkon Shield IUD Products Liab. Litig.,* 526 F. Supp. 887, 894 (N.D. Cal. 1981). The court's inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962).

## III. STATEMENT OF FACTS

On August 5, 2008, Ingomar entered into a leniency agreement with the Antitrust Division, reporting "possible price-fixing, bid-rigging, and market-allocation activity or other

---

a matter of law that ACPERA's limitation on damages applies to both the antitrust *and* RICO claims in Plaintiffs' action, so long as Ingomar is later deemed to have provided "satisfactory cooperation" to Plaintiffs "with respect to the civil action."

5

conduct violative of the Sherman Act in the processed tomato products industry." SUF No. 3; *see also* Zovickian Aff., Exh. 1 (Leniency Agreement). It also agreed to "provide full, continuing and complete cooperation to the Antitrust Division in connection with the anticompetitive activity being reported…." SUF No. 3; s*ee also* Zovickian Aff., Exh. 1 (Leniency Agreement) at 1-2.

In accordance with its ACPERA obligations, Ingomar offered its cooperation to Plaintiffs in this action. SUF No. 5; *see also* Zovickian Aff., Exh. 2 and ¶3 (March 16, 2012 Letter). In response to that offer, Plaintiffs asked for information relating to the claims in their lawsuit, including information that would support their RICO claims. SUF No. 6; *see also* Zovickian Aff., Exh. 3 and ¶4 (October 7, 2013 Letter). Two days after receiving the Plaintiffs' written request, on October 9, 2013, counsel for Ingomar and Pruett met with counsel for Plaintiffs to discuss what Ingomar and Pruett knew of the facts underlying Plaintiffs' claims and answered the questions outlined in Plaintiffs' October 7th Letter. SUF No. 7; *see also* Zovickian Aff., Exh. 4 and ¶4 (October 25, 2013 Letter).

Several weeks later, on October 25, 2013, Ingomar again informed Plaintiffs that the Ingomar defendants stood ready to answer any other questions Plaintiffs had "as part of [their] cooperation obligation under ACPERA with respect to the claims being made against Greg [Pruett] and Ingomar in this lawsuit." SUF No. 7; *see also* Zovickian Aff., Exh. 4 and ¶4 (October 25, 2013 Letter). Plaintiffs again took Ingomar up on its offer of cooperation, asking for additional information regarding their claims, including information that relates explicitly to their RICO claims; Ingomar once again provided the requested cooperation. SUF No. 9; *see also* Zovickian Aff., Exh. 5 and ¶5 (July 29, 2014 Letter) (requesting information regarding "communications between Greg Pruett and Bill Cahill concerning allegations of CTEG price fixing and/or bribery").

During the last meeting between the parties, however, counsel for the Plaintiffs stated that, despite Ingomar's cooperation, Plaintiffs will still seek treble damages and joint and several liability from Ingomar and Pruett for their RICO claims. SUF No. 10; Zovickian Aff. at ¶5.

6

There can be no dispute that the alleged RICO violations were committed "in connection with" the alleged antitrust violation. Plaintiffs' Sherman Act claim is based on "bid rigging, bribery, and allocation of customers." SUF 2; *see also* Order at 12. Plaintiffs' RICO claims are likewise based on the alleged bribery scheme "as well as defendants' scheme to submit rigged bids." SUF 2; *see also* Order at 9 and Plaintiffs Opposition to Defendants' Motion to Dismiss SAC (Dkt. No. 123) (claiming Plaintiffs' damages for their RICO claims were caused by "illegal bribes," "price-fixing," "bid rigging," and "market allocation").

Indeed, in their Second Amended Complaint, Plaintiffs pled their claims in such a way that the very same paragraphs of factual assertions are used to support both the antitrust claim and the RICO causes of action. SUF No. 1; *see also* SAC (Dkt. No. 116) ¶¶ 107, 125 (incorporating each preceding paragraph, including all paragraphs related to Plaintiffs' Sherman Act claim, into the RICO claims). Thus, the allegations underlying the Sherman Act claim and the RICO claims overlap, and all of this alleged conduct is covered by the leniency agreement, which broadly covers "possible price-fixing, bid-rigging, and market-allocation activity or other conduct violative of the Sherman Act in the processed tomato products industry…." SUF Nos. 2 and 3; Zovickian Aff., Exh. 1 (Leniency Agreement) at 1.

## IV. ARGUMENT

When interpreting a statute, courts "look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress. Then if the language of the statute is unclear, [courts] look to its legislative history." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 830-31 (9th Cir. 1996) (citation omitted).

### A. ACPERA's Plain Meaning Limits Damages For The Entire "Action"

The first step in statutory construction is to "determine whether the statutory text is plain and unambiguous. If it is, [the court] must apply the statute according to its terms." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009); *accord, Carson Harbor Village, Ltd. v. Unocal Corp.*, 270

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY INGOMAR DEFENDANTS FOR PARTIAL
SUMMARY JUDGMENT OR FOR AN ORDER PURSUANT TO THE COURT'S INHERENT AUTHORITY
CASE NO. 2:09-CV-00208-KJM-EFB

F.3d 863, 878 (9th Cir. 2001).

Section 213(a) of ACPERA states:

> [I]n any civil action alleging a violation of section 1 or 3 of the Sherman Act, or alleging a violation of any similar State law, based on conduct covered by a currently effective antitrust leniency agreement, the amount of damages recovered by or on behalf of a claimant from an antitrust leniency applicant who satisfies the requirements of subsection (b),[2] together with the amounts so recovered from cooperating individuals[3] who satisfy such requirements, shall not exceed that portion of the actual damages sustained by such claimant which is attributable to the commerce done by the applicant in the goods or services affected by the violation.

Pub. L. No. 108-237, § 213, 118 Stat. 661, 666 (2004).  The term "any civil action" is unambiguous and applies to any *case* or *complaint* that includes a Sherman Act Section 1 claim. *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."); L.R. 101 ("'Action' means a case, proceeding, or matter.").

Further, ACPERA, by its terms, unambiguously limits the leniency applicant's liability to "actual damages" in the "action" for all claims "based on conduct covered by a currently effective leniency agreement."  It does not impose this actual-damages limitation only on <u>certain</u> claims within a single "action" (*i.e.*, case); it applies to all claims within an action (or complaint) where those claims are based on conduct covered by a leniency agreement.  Here, the claims remaining in this "action" – the Sherman Act claim and the RICO claims – are based on the same conduct covered by the leniency agreement.

This interpretation of the plain language accords with the use of the word "action" elsewhere in the ACPERA statute.  For example, the cap on damages is contingent on the leniency applicant providing "satisfactory cooperation to the claimant with respect to the *civil action*," including "providing a full account to the claimant of all facts known to the applicant or cooperating individual, as the case may be, that are potentially relevant to the *civil action*" and

---

[2] Subsection (b) requires the leniency applicant to provide "satisfactory cooperation to the claimant with respect to the civil action."  ACPERA §213(b).

[3] "Cooperating individual" is defined as "a current or former director, officer or employee of the antitrust leniency applicant who is covered by the agreement."  Antitrust Criminal Penalty Enhancement and Reform Act § 212.  Greg Pruett is a cooperating individual under ACPERA.

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY INGOMAR DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT OR FOR AN ORDER PURSUANT TO THE COURT'S INHERENT AUTHORITY
CASE NO. 2:09-CV-00208-KJM-EFB

"furnishing all documents or other items potentially relevant to the *civil action*...." ACPERA, § 213(b) (emphasis added). Much like the earlier language quoted, the cooperation language is not limited merely to the antitrust claim within an "action." The cooperation requirement extends to all claims in the "action" that are based on conduct covered by the leniency agreement.

Here, because the allegations underlying the Sherman Act claim are the same as those that underlie the RICO claims, it would be incongruous and unfair to interpret ACPERA as requiring the leniency applicant to cooperate on the antitrust claim (and limit damages for the antitrust claim), but then provide no damages limitation for related claims based on the same conduct and same alleged harm. Under this scenario, the leniency applicant would effectively be forced to cooperate on all of the related claims in the action (since the facts overlap), and yet be denied any corresponding benefit under the ACPERA statute.

In short, the only interpretation of ACPERA's plain statutory language that gives effect to "its object and policy" in this case, *Glickman*, 82 F.3d at 830-31, is that ACPERA's damage limitation should apply to both the RICO and antitrust claims alleged in this "action."

### B. The Antitrust Division's Leniency Agreements Apply Not Only To The Antitrust Violation, But Also To "Such Additional Offenses That Are Committed In Connection With The Antitrust Violation"

On its website, the Antitrust Division publishes its answers to *Frequently Asked Questions Regarding The Antitrust Division's Leniency Program And Model Leniency Letter)*. Question No. 6 states: "Does the Division's leniency program apply to any non-antitrust crimes?" The Division's answer is that Ingomar's leniency agreement "provides leniency from the Antitrust Division not only for a criminal antitrust violation, but also for other offenses committed in connection with the antitrust violation":

> [The leniency letter] "provides leniency from the Antitrust Division 'for any act or offense [the applicant] may have committed [time period covered] in connection with the anticompetitive activity being reported.' Thus, this language provides leniency from the Antitrust Division not only for a criminal antitrust violation, but also for other offenses committed in connection with the antitrust violation. For example, conduct that is usually integral to the commission of a criminal antitrust violation, such as

9

> mailing, faxing, or emailing bids agreed upon with competitors, can constitute other offenses, such as mail or wire fraud violations or conspiracies to defraud.  On occasion, other types of offenses may also occur in connection with a criminal antitrust violation.  A cartelist may bribe a purchasing agent to steer contracts to the designated winning bidders in connection with a bid-rigging scheme, or payoffs received in connection with a bid-rigging scheme may not be reported as income to the Internal Revenue Service.  As stated above, the protections of a conditional leniency letter apply to such additional offenses that are committed in connection with the antitrust violation."

RJN, ¶2 and Exh. 2 thereto (*Frequently Asked Questions Regarding The Antitrust Division's Leniency Program And Model Leniency Letter*) ¶6.

Thus, Ingomar's leniency letter applies squarely to the alleged conduct used to form the basis of the RICO claims alleged in this action, namely, "brib[ing] a purchasing agent to steer contracts to the designated winning bidders in connection with a bid-rigging scheme."

Plainly, the RICO violations alleged in this action were committed "in connection with the antitrust violation" alleged in the action.  Moreover, the antitrust claim and the RICO claims are based on the same conduct – all of which is covered by the leniency agreement.  In these circumstances, ACPERA's "actual damages" limitation must apply to the RICO claims as well as the Sherman Act claim alleged in this action.

### C. Legislative History Supports The Interpretation That ACPERA's Damages Limitation Applies To All Claims Within A Single Action

Given that the statute unambiguously limits damages for all claims in an "action" based on conduct covered by a leniency agreement, there is no need to look to legislative history to aid in the statute's interpretation.  *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1709 (2012) (internal quotation marks omitted) (holding that "reliance on legislative history is unnecessary in light of the statute's unambiguous language."); *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 132 (2002) ("The Court of Appeals correctly recognized reference to legislative history is inappropriate when the text of the statute is unambiguous.")  Nevertheless, the legislative history supports the application of ACPERA damages limitation provision to all claims in a single action that are based on covered conduct.

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY INGOMAR DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT OR FOR AN ORDER PURSUANT TO THE COURT'S INHERENT AUTHORITY
CASE NO. 2:09-CV-00208-KJM-EFB

ACPERA was passed to remove a "major disincentive" for corporations and individuals to participate in the Antitrust Division's leniency program: "the threat of exposure to a possible treble damage lawsuit by the victims of the conspiracy." RJN, ¶3 and Exh. 3 thereto (Congressional Record, 150 Cong. Rec. 45, 3614 (2004)). Before Congress passed ACPERA, a leniency applicant "still face[d] treble damages with joint and several liability. In other words, before voluntarily disclosing its criminal conduct, a potential amnesty applicant must weigh the potential ruinous consequences of subjecting itself to liability for three times the damages that the entire conspiracy caused." *Id*.

ACPERA was designed to address "this disincentive to self-reporting" by ensuring that "the applicant would only be liable for actual damages attributable to its own conduct, rather than being liable for three times the damages caused by the entire unlawful conspiracy." *Id*. Thus, the purpose of the law is to give "prosecutors the authority to effectively limit a cooperating party's potential civil liability…to single damages in *any subsequent civil lawsuit* brought by a private plaintiff." *Id*. at S3615 (emphasis added). Allowing claimants to avoid ACPERA's damages limitation by including a RICO claim – which allows a plaintiff to recover treble damages and imposes joint and several liability, the very things ACPERA eliminates – would render ACPERA toothless and frustrate Congress's desire to remove a "major" disincentive to self-reporting.

ACPERA's damages limitation provision was set to expire in 2009, but was given a one-year extension in 2009 and a 10-year extension in 2010. The legislative history for those two extensions also supports the interpretation that ACPERA was intended to limit the leniency applicant's damages to single damages attributable to its commerce. For example, in 2009, Representative Johnson noted that ACPERA provided a "powerful incentive" to report price-fixing by "empower[ing] the Justice Department to limit civil liability of a cooperating party to single damages, not treble." RJN, ¶4 and Exh. 4 thereto (Congressional Record, 155 Cong. Rec. 85, 6329-30 (June 9, 2009)). He concluded by stating: "The positive impact of this law cannot be overstated." *Id*. Similarly, in 2010, after noting that "ACPERA provides a necessary

11

complement to the Justice Department's highly successful corporate leniency program by limiting civil damages recoverable against a party who submits an application for leniency," Senator Leahy explained that "ACPERA's incentives are critical to the Justice Department's criminal antitrust enforcement efforts…" and that without them "potential leniency applicants could be deterred from self-reporting antitrust violations."  RJN, ¶5 and Exh. 5 thereto (Congressional Record, 156 Cong. Rec. 82, 4559-60 (May 27, 2010)).

## V.     CONCLUSION

Congress enacted ACPERA to provide a "powerful incentive" – one "that cannot be overstated" – for companies to self-report cartel activity to the Department of Justice in a manner that avoids the crushing financial consequences of follow-on civil litigation aimed at exacting treble damages and joint and several liability.  Congress did so by capping liability to single damages for all claims in a civil "action" that arise from conduct covered by a leniency agreement.  This "powerful incentive" has worked in this case, and Plaintiffs have benefited, and will continue to benefit, from Ingomar's cooperation with respect to all claims alleged in this action.

Both the plain language and plain purpose of ACPERA prevent an antitrust plaintiff from circumventing the single-damages protection afforded to leniency applicants by the simple expedient of recasting covered conduct in the guise of RICO claims.  Such an end-run would be particularly inappropriate here, where the antitrust claim and the RICO claims are based on the same conduct, where the RICO violations – if committed at all – were committed "in connection with" the Sherman Act claim (as the DOJ defines that phrase), and where all of the conduct is covered by the leniency agreement.

The confusion now created by the Plaintiffs as to whether ACPERA's damages cap applies to all overlapping claims in this lawsuit has created great uncertainty for all parties.  It has also unnecessarily exposed Ingomar to a significant unknown risk – not only because of the cooperation it has already provided the Plaintiffs, but also because of Ingomar's ongoing and future cooperation obligations under ACPERA for the remainder of the litigation.

12

To resolve this uncertainty and allow the parties to move forward expeditiously, and in good-faith, we ask the Court to rule now on the pure question of law presented and hold that ACPERA's damages limitation applies to all claims alleged by Plaintiffs in this action.

Respectfully submitted,

DATED:  October 15, 2014         By:     /s/ Stephen Zovickian
                                         Stephen Zovickian
                                         BINGHAM McCUTCHEN LLP
                                         Three Embarcadero Center
                                         San Francisco, CA 94111-4067
                                         Telephone: (415) 393-2000
                                         Facsimile: (415) 393-2286
                                         stephen.zovickian@bingham.com

                                         *Attorneys for Defendant Ingomar Packing Company*

DATED:  October 15, 2014         By:     /s/ Miles Ehrlich
                                         Miles Ehrlich (SBN 237954)
                                         RAMSEY & EHRLICH LLP
                                         803 Hearst Avenue
                                         Berkeley, CA 94710
                                         Telephone: (510) 548-3600
                                         Facsimile: (510) 291-3060
                                         miles@ramsey-ehrlich.com

                                         *Attorneys for Defendant Gregory R. Pruett*

13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY INGOMAR DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT OR FOR AN ORDER PURSUANT TO THE COURT'S INHERENT AUTHORITY
CASE NO. 2:09-CV-00208-KJM-EFB