Dale C. Campbell, State Bar No. 99173
James Kachmar, State Bar No. 216781
**weintraub tobin** chediak coleman grodin
Law Corporation
400 Capitol Mall, 11th Floor
Sacramento, California   95814
(916) 558-6000 – Main
(916) 446-1611 – Facsimile
Email:  dcampbell@weintraub.com
Email:  jkachmar@weintraub.com

Attorneys for Plaintiffs The Morning Star Packing Company;
Liberty Packing Company, LLC; California Fruit & Tomato Kitchens, LLC;
and The Morning Star Company

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE MORNING STAR PACKING COMPANY, a California limited partnership; et al., <br><br> Plaintiffs, <br><br> vs. <br><br> SK FOODS, L.P., a California limited partnership; et al., <br><br> Defendants. | Case No. 2:09-CV-00208 KJM-EFB <br><br> PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS INGOMAR PACKING COMPANY AND GREGORY R. PRUETT'S PARTIAL MOTION FOR SUMMARY JUDGMENT OR FOR AN ORDER PURSUANT TO COURT'S INHERENTY AUTHORITY <br><br> Date:   November 21, 2014 <br> Time:   10:00 a.m. <br> Place:   Courtroom 3 <br> Judge.:  Hon. Kimberly J. Mueller |

I. INTRODUCTION

"Federal courts are courts of limited jurisdiction and 'must refrain from deciding abstract or hypothetical controversies and from rendering impermissible advisory opinions with respect to such controversies.'" *Coalition for a Sustainable Delta v. Koch*, 2009 U.S. DIST. LEXIS 63847 at *21 (E.D. Cal. 2009), citations omitted. And yet, that is what Defendants[1] are asking the Court to do – issue an advisory opinion on a hypothetical issue. Specifically, Defendants ask the Court to determine *now* a limitation on their potential exposure at trial based on assumptions and hypotheticals as to "what may happen" in the future. In fact, Defendants begrudgingly admit this fact in a footnote confirming that this issue is not ripe yet. See Defs' Motion, Dkt #194 at pp. 4-5, fn. 1 [recognizing that the ACPERA damages limitation can only be determined after trial and that Defendants are "not asking the Court to decide *now* that [their] cooperation has been satisfactory" to entitle them to ACPERA's protections.]

In essence, Defendants ask the Court to provide guidance as to the extent of their potential damages, so that they can determine whether to continue to cooperate under ACPERA, based on the Court assuming the following hypotheticals:

1. Defendants have been provided ACPERA immunity by the Antitrust Division of the U.S. Department of Justice;

2. That Defendants have fulfilled their obligations under ACPERA to cooperate with both the Government and victims, such as Morning Star here; and

3. That the Court will find *post-trial* that Defendants have in fact satisfied their ACPERA cooperation requirements.

Such a determination, based on hypothetical assumptions, violates this Court's constitutional responsibilities under Article III against issuing an advisory opinion. Morning Star respectfully requests the Court to refuse to engage in this unconstitutional examination and deny Defendants' motion.

---

[1] "Defendants" for purposes of this Opposition refers only to moving Defendants Ingomar Packing Company and Greg Pruett. None of the other defendants in this matter have ACPERA immunity for their wrongdoing.

In the unlikely event the Court decides that the advisory opinion being sought does not violate Article III, Morning Star submits that the clear reading of ACPERA does not provide any immunity to Defendants for their violation of federal RICO laws. Thus, Morning Star respectfully requests the Court to deny the motion on those grounds.

## II.  STATEMENT OF FACTS

This case arises out of a scheme by defendants to fix prices, rig bids and allocate market share in the processed tomato product industry with an intent to harm Morning Star. At the time of the illegal conspiracy, Morning Star was one of the largest processors of processed tomato products in the U.S. and reputed to be the most efficient processor. Numerous participants in the scheme have pled guilty to federal crimes and have been sentenced to prison. When the criminal activity came to light, Defendants Ingomar and Pruett rushed to the U.S. Attorney's office to seek immunity under ACPERA. Of course, one of the conditions for obtaining such immunity is an admission by the requesting corporate entity that it had, in fact, engaged in illegal activities.

Morning Star filed its Second Amended Complaint ("SAC") in this matter on December 6, 2010. Dkt. # 116. It includes claims against Defendants, among others, for violation of Section 1 of the Sherman Antitrust Act as well as violations of and conspiracy to violate federal RICO laws. See SAC, e.g., ¶¶100-129. Plaintiffs contend that Defendants (along with their co-conspirators and co-defendants SK Foods, Scott Salyer, Intramark USA, Randy Rahal, Los Gatos Tomato Products, and Stuart Woolf) engaged in an unlawful scheme to harm Morning Star by price fixing, market allocation, submitting rigged bids and commercial bribery. See, SAC.

Defendants have advised Plaintiffs that they are attempting to obtain immunity under ACPERA and are willing to cooperate with Morning Star in connection with their unlawful acts. See Exhibit 2 to Affidavit of Steven Zovickian ("Zovickian Aff."), Dkt. # 197. For some reason, Defendants have never provided Plaintiffs, nor do they provide this Court, with a fully-executed Leniency Agreement between Defendants and the DOJ's Antitrust Division establishing that there is in fact an agreement in place. See Exh. 1 to Zovickian Aff [providing copy of proposed

Leniency Agreement that is not signed by Defendants or their counsel to show acceptance.][2]

It also comes as no surprise that Defendants' Motion fails to apprise the Court that the purported "Leniency Agreement" is "*conditional*." See Exhibit 1 to Zovickian Aff., at p. 1 [expressly stating that: "This agreement is conditional and depends upon Ingomar satisfying the condition set forth below."] The purported Leniency Agreement also provides that only "[a]fter all of these conditions are met, the Division will notify Ingomar in writing that the application [for ACPERA leniency] has been granted." Id. Defendants offer no evidence (nor have they produced any in discovery in this matter) that the Antitrust Division has in fact notified Ingomar that its application for leniency has been granted. Kachmar Aff., ¶ 4.

Equally important, the purported "Leniency Agreement" provides that Ingomar must satisfy seven conditions in order to be eligible for ACPERA immunity. *Id.* at pp. 1-2.[3] These conditions that Defendants must satisfy include:

(1) Providing the Antitrust Division with "a full exposition of all facts known to Ingomar relating to the anti-competitive activity being reported";

(2) "providing promptly all documents or other items in its possession, custody or control wherever located requested by the anti-trust division to the extent not already produced";

(3) "using its best efforts to secure the ongoing full and truthful cooperation of the current directors, officers and employees of Ingomar …";

(4) facilitating the ability of current directors, officers and employees to appear for such interviews or testimony in connection with the anti-competitive activity being reported …";

(5) "using its best efforts to ensure that current directors, officers and employees who provide information to the anti-trust division … respond completely, candidly and truthfully to all questions asked in interviews and grand jury appearances and at trial";

---

[2] Morning Star objects to the submission of this document in support of Defendants' motion. Morning Star has requested Ingomar to produce all documents and communications exchanged with the U.S. Government, including any *agreements*, concerning this matter and this document was never provided in response, despite Ingomar's representation that it would produce all such responsive documents. Affidavit of James Kachmar ("Kachmar Aff."), ¶¶ 2-4 and Exhs. A -B thereto [specifically Document Requests Nos. 72-74 and Ingomar's Responses thereto].

[3] Apparently, Defendants did not voluntarily self-report their criminal activities to the Antitrust Division but sought ACPERA immunity only after the DOJ had started its investigation into Defendants' criminal activities.

(6) "using its best efforts to ensure that current directors, officers and employees who provide information to the anti-trust division … make no attempt either falsely to protect or falsely to implicate any person or entity;" and

(7) "make all reasonable efforts to the satisfaction of the anti-trust division to pay restitution to any person or entity injured as a result of the anti-competitive activity being report in which Ingmar was a participate." See Ex. 1 to Zovickian Aff, at pp. 1-2.

Defendants' Motion does not provide any evidence that Defendants have complied with any of these conditions necessary to obtain leniency under ACPERA.

As Defendants acknowledge, they are not asking this Court to determine now whether they have in fact satisfied their duties to cooperate in order to be entitled to ACPERA immunity. See Defs' Motion, at pp. 4-5, fn. 1. Thus, Defendants are essentially asking the Court to assume or hypothesize as to what may occur at and after trial in order to render an advisory opinion as to the extent of their potential exposure. Further, Defendants make this request, not because it will narrow any issues for trial, it won't; but rather, to allow them to determine whether they should continue to cooperate with the Government and Morning Star in order to seek the benefits of ACPERA's protections. See Defendants' Motion, at p. 4, lns. 11-12 [advising that without the Court's determination of this hypothetical issue, "Ingomar [is] in an untenable position moving forward…"]; Id. at p. 12, lns. 24-28 [acknowledging that this hypothetical issue has supposedly "exposed Ingomar to a significant unknown risk" that will apparently affect "Ingomar's ongoing and future cooperation obligations under ACPERA for the remainder of the litigation."] This shows the impropriety of the requested relief – Defendants want the Court to provide them with an advisory opinion *now* as to their *potential exposure* so that they can decide whether to continue to cooperate in accordance with their duties under ACPERA.

This is improper, if not unconstitutional, and the Court should deny Defendants' motion.

///

///

///

///

III.   LEGAL ARGUMENT

A.   Defendants are not Entitled to Partial Summary Judgment; The Court Would Violate Its Article III Powers to Issue an Advisory Opinion as Requested by Defendants.

1.   "Partial" Summary Judgment is Improper.

As Defendants recognize, "a Court may grant summary judgment upon all-or-part-of a claim or defense."  See Defs' Motion at p. 5 [citing FRCP Rule 56(a), (b)].  "Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment under the legal principles that govern the case at issue."  *Moreland v. Las Vegas Metro Police Dept.*, 159 F.3d 365, 369 (9th Cir. 1998).  A partial summary judgment, as is being requested here, is recognized as being useful where "such a ruling may narrow the issues at trial and may lead to early settlement if the issue ruled upon is dispositive."  See, e.g., Schwarzer, Toshima & Wagstaff, CAL. PRACTICE GUIDE, FEDERAL CIVIL PROC. BEFORE TRIAL, §14:39, at pp. 14-15.

It is clear that under this rule, it would be improper for the Court to grant partial summary judgment to Defendants as requested.  First, such a ruling would not result in "narrowing" any issues for trial, or even partially dispose of any claims, since the entire issue of damages would still have to be presented at trial.  In fact, the determination sought by Defendants would only be useful if, as they acknowledge, they later convince the Court **post-trial** that they are entitled to immunity under ACPERA.  See Defs' Motion, at pp. 4-5, fn. 1. In fact, it appears that Defendants are seeking this advisory opinion only so they can make a strategic decision  *now* whether to fulfill their obligations under ACPERA. See Defendants' Motion, at p. 4, lns. 11-12; id. at p. 12, lns. 24-28. Thus, because the requested ruling does not dispose of all, or even part of a claim or defense, as even Defendants acknowledge, partial summary judgment would be improper.

Furthermore, Defendants have not met their burden of showing that there is no genuine issue of material fact that they are in fact entitled to immunity under ACPERA.  There is no admissible evidence that Defendants have in fact entered into an agreement with the DOJ's Antitrust Division for leniency under ACPERA. See Exh. 1 to Zovickian Aff. [purported

agreement *unsigned* by Defendants.] Defendants offer no evidence that they have satisfied all of the conditions necessary for immunity under ACPERA. Defendants offer no evidence that the DOJ's Antitrust Division has in fact notified them that they have satisfied the conditions necessary for leniency under ACPERA. Thus, Defendants have failed to offer any admissible evidence, or any evidence at all, to meet their burden of proof of establishing that there are no genuine issues of material fact that warrant the relief requested. Defendants are not entitled to partial summary judgment.

### 2.   The Court Does Not Have the "Inherent" Authority to Render Advisory Opinions.

Further, contrary to the suggestion by Defendants, the Court does not have the "inherent power" to render advisory opinions based on hypothetical facts or unrealized assumptions. In fact, to do so is a violation of the Court's Article III responsibilities. Furthermore, even assuming that Article III permits the Court to issue advisory opinions, which it does not, Defendants fail to show how such a determination would allow the Court "to achieve the orderly and expeditious disposition of" this case. Even if the Court granted Defendants' Motion, which it should not, Morning Star would still be entitled to put on its entire case at trial, including the damages it sustained as a result of Defendants' unlawful conduct. Then, if Morning Star obtained an award against Defendants, there would still need to be a post-trial determination as to whether Defendants are in fact entitled to leniency under ACPERA. Thus, the advisory opinion sought by Defendants would do *nothing* to streamline the issues for trial (or even post-trial). Rather, as explained above, Defendants admit that they are seeking this advisory opinion only to determine whether they should continue to cooperate under ACPERA.

Defendants' request for an improper advisory opinion is similar to the one that was rejected by this Court in *Coalition for a Sustainable Delta v. Koch*, 2009 U.S. DIST. LEXIS 63847 (E.D. Cal. July 16, 2009). There, plaintiffs moved for summary judgment and requested, among other things, a determination of two abstract questions of law: (1) whether a particular act constituted a violation of the Endangered Species Act ["ESA"]; and (2) whether a government agency violates the ESA if it took certain actions without first obtaining

authorization from the appropriate wild life agency. 2009 U.S. DIST. LEXIS 63847, at *18. That is, the plaintiff sought to summarily adjudicate the hypothetical situation of what would be the legal effect if certain things *were to happen*. This Court held that these determinations were not amenable to summary judgment because:

> "This is an abstract question as the motion is supported by no undisputed facts that could possibly support such a finding. In other words, plaintiff's motion would require that the court hypothetically <u>assumed</u> for purposes of this motion, that the striped bass sport fishing regulations caused an individual angler to release (or not catch) one <u>particular</u> striped bass which then in turn consumed one particular individual listed species and determined the legal effect of such a hypothetical case … On summary judgment, a district court may not assume facts that do not exist or cannot be proved to decide abstract questions of law." *Id*. at *20-21.

This Court continued by recognizing, as mentioned above, that "federal courts are courts of limited jurisdiction and 'must refrain from deciding abstract or hypothetical controversies and from rendering impermissible advisory opinions with respect to such controversies'." *Id*. at *21, citations omitted.

Likewise here, Defendants are requesting the Court to issue an improper advisory opinion. Specifically, they request the Court to make the following assumptions in order to "summarily adjudicate" the issue of their potential exposure:

(1) That Defendants have an operable Leniency Agreement with the DOJ's Antitrust Division;

(2) that they have satisfied or will satisfy the numerous conditions set forth in any purported Leniency Agreement;

(3) that the Antitrust Division has notified or will notify them in writing that they have complied with such conditions; and

(4) that this Court will make a finding post-trial that they have satisfied their duty to cooperate under ACPERA.

Defendants offer no admissible evidence to establish any of these facts. Instead, they ask the Court to assume that these facts exist, or will exist, in order for them to determine *now* what is the scope of their liability exposure so that they can determine whether to continue to

cooperate with Morning Star and the Government under ACPERA.  This would run afoul of the Court's duties under Article III and the Court should deny Defendants improper motion.

### B.  Even if the Court Decides to Issue an Advisory Opinion, the Purported "Leniency Agreement" Does Not Extend ACPERA Immunity to Plaintiffs' Civil RICO Claims.

As Defendants acknowledge, "the first step in statutory construction is to "determine whether the statutory text is plain and unambiguous.  If it is, [the Court] must apply the statute according to its terms." *Carsiera v. Salazar*, 555 U.S. 379, 387 (2009).[4]  A plain reading of section 213(a) of ACPERA makes clear that its liability limitations apply only to violations of section 1 or 3 of the Sherman Act – or to *state law* claims based on antitrust violations.  That is, ACPERA applies by its clear terms only to violation of the Sherman Act or similar state law antitrust violations – not to violations of other Federal Statutes like the RICO statutes.

Section 213(a) provides, in pertinent part:

> "In any civil action alleging a violation of Section 1 or 3 of the Sherman Act or alleging a <u>violation of any similar state law, based on conduct covered by a currently effective anti-trust leniency agreement</u>, the amount of damages recovered by or on behalf of a claimant from an anti-trust leniency applicant who satisfy the requirements of subsection (b)[5] … shall not exceed the portion of the actual damages sustained by such claimant which is attributable to the commerce done by the applicant in the goods or services <u>affected by the violation</u>."  Public Law No. 108-237, §213, 118 Stat. 661, 666 (2004), emphasis added.

The section makes clear that its provisions apply only to an alleged violation "of Section 1 or 3 of the Sherman Act" or any alleged violation of "any similar state law, based on conduct covered by a currently effective anti-trust Leniency Agreement."  To read its plain meaning another way, the statute makes no mention that it applies to any violations of law *except* for violations of the Sherman Act or similar state antitrust laws.  ACPERA is silent as to providing any protection for the violation of other federal statutes, such as the RICO statutes, which is further evidence of congressional intent that it does not do so. *See Arc Ecology v. U.S.*

---

[4] Defendants recognize that the Court should only look to legislative history of ACPERA if the statute "is unclear." See Defs' Motion, at p. 7 [citing *NW Forrest Res. Council v. Glickman*, 82 F.3d 825, 830-31 (9th Cir. 1996).] It is unclear from Defendants' motion why they believe looking at the legislative history is necessary here because they admit that ACPERA's meaning is "plain."

[5] Once again, there has been no determination nor evidence offered that Defendants' "satisfy the requirements of subsection (b)."

{1837708.DOCX;} 8 Ps & As in Opposition to Defendants' Motion for Partial Summary Judgment

*Dep't of the Air Force*, 411 F.3d 1092, 1099-1100 (9th Cir. 2005) (Callahan, J.) [explaining that "the doctrine of *expressio unius est exclusio alterius* . . . teaches that omissions are the equivalent of exclusions when a statute affirmatively designates certain persons, things, or manners of operation"]; *Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1093-94 (E.D. Cal. 2013) (Karlton) [reiterating that, "where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed"].

This clear reading is further supported by the last line of section 213(a), which Defendants conveniently ignore, that an ACPERA defendant's damages are limited to those sustained by the claimant "in the goods or services affected <u>by the violation</u>." That is, the statute makes explicit that the "violation" referred to in its provisions can only mean a violation of "Section 1 or 3 of the Sherman Act" or any alleged violation "of any similar state law, based on conduct covered by a currently effective anti-trust Leniency Agreement." Had Congress wanted, as Defendants suggest here, to extend immunity for cooperating antitrust violators to include violations of Federal law other than the Sherman Act, they could have done so by including that broader language. The fact that the statute is drafted narrowly shows that Congress did not intend ACPERA to offer such broad protections.

Disturbingly, Defendants either mistakenly or intentionally misread the statute to try to support their argument for broader protection by claiming that, "ACPERA, by its terms, unambiguously limits the leniency applicant's liability to `actual damages' in the `action' for <u>*all*</u> claims `based on conduct covered by a currently effective leniency agreement'." See Defs' Motion, at p. 8, lns. 13-15, emphasis added. Defendants completely misstate the language in section 213(a) of ACPERA. The phrase "based on conduct covered by a currently effective antitrust leniency agreement" modifies the prior clause, "or alleging a violation of <u>*any similar State law*</u>." The statute does not contain any language, as claimed by Defendants, that "*all* claims" based on conduct covered by a leniency agreement are subject to ACPERA liability limitations. The Court should not be misled by Defendants' misreading of the ACPERA statute.

Defendants also claim that "it would be incongruous and unfair to interpret ACPERA as requiring the leniency applicant to cooperate on the antitrust claim (and limit damages for the

antitrust claim), but then provide no damages limitation for related claims based on the same conduct and the same alleged harm." Defs' Motion, at p. 9:6-9. Once again, Plaintiffs either mistakenly or purposely misstate the intent of ACPERA to mislead the Court.

Defendants' predicament is of their own creation. Having engaged in unlawful conduct, they are faced with the decision as they admit, whether to continue to comply with their cooperation obligations and obtain the benefits offered by ACPERA (including no *criminal* prosecution), or now rebuke their cooperation duties and take their chances at trial – and with potential criminal prosecution. There is nothing unfair or incongruous here. If Defendants can establish that they have satisfied all conditions for ACPERA immunity, they will recognize significant benefits, primarily immunity from criminal prosecution (unlike their co-conspirator Salyer who has been sentenced to six years in prison) as well as limitations on their liability for their admitted violations of the Sherman Act. To the extent that they engaged in conduct that also runs afoul of other federal statutes such as RICO is irrelevant to their recognition of these substantial benefits. Had Congress intended to provide a "blank check" for Defendants who violate antitrust laws to be entitled to broader protections, Congress could have expanded ACPERA to say so. The fact that Congress chose not to speaks volumes.[6]

---

[6] Despite the plain meaning of Section 213(a), Defendants offer irrelevant or misleading portions of other materials to support their improper reading of ACPERA. Morning Star objects to the Court taking judicial notice of these materials as set forth in the accompanying Objection to Request for Judicial Notice.

To the extent the Court is inclined to review these materials, Morning Star submits that they are irrelevant and misconstrued by Defendants. First, Defendants offer the DOJ's 1993 "Corporate Leniency Policy." See Exh. 1 to Req. for Judicial Notice. This Policy makes clear that the "leniency" discussed therein means only "not charging such a firm criminally for the activity being reported." *Id*. at p. 1. There is no discussion anywhere in that document, nor does the DOJ appear to take any position, as to the meaning of section 213(a) or the extent of immunity for purposes of civil liability.

Second, Defendants resort to offering a "Frequently Asked Questions" printout to support their strained reading of section 213(a). Again, this document pertains only to the DOJ's purported approach towards criminal prosecution and makes no mention of civil liability or section 213(a). Furthermore, Defendants' motion omits the statement in the section they cite that makes clear: "The conditional leniency letter, however, **only binds the Antitrust Division, and not other federal or state prosecuting agencies.**" See Exh. 2 to Req. for Jud. Not., at p. 7, emphasis added. That is, contrary to Defendants' representations to this Court, only the Antitrust Division of the DOJ will consider whether to apply leniency to violations of other federal laws but that it cannot bind other agencies, such as the U.S. Attorney's Office itself, from prosecuting such statutory violations. And it certainly does not state that the Antitrust Division intends to bind private litigants.

Finally, Defendants offer three excerpts from the Congressional Record. None of these offer any guidance as to how to interpret section 213(a). Courts have routinely held that statements on the floor of congress by a member

weintraub tobin chediak coleman grodin
law corporation

IV. CONCLUSION

The Court should not accept Defendants' improper invitation to render an advisory opinion in violation of Article III of the U.S. Constitution. The determination sought by Defendants requires the Court to assume numerous hypothetical and unproven facts that Defendants may eventually (i.e., post-trial) be found to be entitled to ACPERA immunity. There is no reason why the requested determination, i.e. the extent of Defendants' immunity, cannot be made post-trial, as even Defendants acknowledge its ACPERA immunity determination will have to be. See Defs' Motion, at pp. 4-5 n. 1. Such a determination *now* will do nothing to streamline issues for trial (in fact, it will not affect the issues to be presented at trial at all); but rather, an advisory opinion will only allow Defendants to determine whether they should continue to seek protections under ACPERA or repudiate their purported commitments to the DOJ's Antitrust Division. Morning Star respectfully requests the Court to deny the motion on this ground.

Furthermore, the unambiguous language in ACPERA states that its protections are only applicable to violations of the Sherman Act and/or any state law violations based on similar conduct. Section 213(a) of ACPERA is silent as to whether its civil liability limitations extend to any violations of other federal statutes such as RICO here. This silence is further evidence of congressional intent that it not do so. The Court should not accept Defendants request to

---

are not authoritative as to congressional intent. See, e.g., *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 686-87 (9th Cir. 2006) ["[A] committee report is entitled to considerably greater weight than comments made during floor debate."]; see also *Garcia v. United States*, 469 U.S. 70, 76, (1984) [eschewing reliance on "snippets" such as "passing comments of one Member" and "casual statements from the floor debates" in favor of committee reports on the bill, which "represent the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation"]; *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1082 (9th Cir. 1999) ["This circuit relies on official committee reports when considering legislative history, not stray comments by individual[] [legislators] or other materials unrelated to the statutory language or the committee reports."]; *E. & J. Gallo Winery v. Cantine Rallo, S.P.A.*, 430 F. Supp. 2d 1064, 1080 (E.D. Cal. 2005) [noting that "hearsay comments from individuals, even if they are legislators, are not authoritative as compared with committee reports"]. Furthermore, the statements of a few congressional members do not appear to provide much clarification. First, the 2004 amendments were limited only to amending "the *antitrust laws* to modify the damage recovery from a corporation and its executives to actual damages." See Cong. Rec., 150 Cong. Rec. 45, 3614 (2004), emphasis added. The Legislative History makes clear that the amendment was limited to violations of antitrust law and no other Federal statutes, such as RICO. Second, the 2009 and 2010 amendments only went to extending ACPERA's sunset clause (for one year in 2009 and ten years in 2010) and did not otherwise amend any other provisions. The fact that there were cursory statements supporting the extension of ACPERA in 2009 and 2010 does nothing to address the meaning of section 213(a).

**weintraub tobin** chediak coleman grodin
law corporation

1  rewrite ACPERA to expand its protection where Congress has decided not to.  Defendants'
2  motion is improper and should be denied.
3      Respectfully submitted,
4  Dated:  November 7, 2014        WEINTRAUB TOBIN CHEDIAK COLEMAN GRODIN
                                   Law Corporation


                                   By:    /s/ - James Kachmar
                                          Dale C. Campbell
                                          James Kachmar

                                          Attorneys for Plaintiffs
                                          The Morning Star Packing Company,
                                          Liberty Packing Company, LLC, California
                                          Fruit & Tomato Kitchens, LLC, and
                                          The Morning Star Company