BENJAMIN B. WAGNER
United States Attorney
MATTHEW D. SEGAL, State Bar No. 190938
Counsel for Service[1]
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700
Email: Matthew.Segal@usdoj.gov

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORNING STAR PACKING COMPANY, L.P., et al., | ) No. 2:09-cv-208-KJM-EFB |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) UNITED STATES'S AMICUS BRIEF |
| | ) IN RESPONSE TO |
| v. | ) DECEMBER 15, 2014 ORDER |
| | ) |
| SK FOODS, L.P., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

---

[1] Pursuant to Local Rule 131(a), additional Department of Justice entities represented are listed on the signature page.

UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL IMPEDIMENTS TO PRODUCTION BY THE UNITED STATES........................ 2

  A.  The Touhy Regulations.......................................................................... 2

  B.  Sensitive and Privileged Information...................................................... 5

  C.  Burden .................................................................................................. 12

III.  LEGAL IMPEDIMENTS TO PRODUCTION BY DEFENDANT SALYER..................... 13

  A.  Criminal Protective Order.................................................................... 13

  B.  Sensitive and Privileged Information.................................................... 14

IV.  PLAINTIFF'S OFFER TO LIMIT THE PROPOSED DISCOVERY................................ 14

V.   CONCLUSION ................................................................................................ 16

UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Boron Oil Co. v. Downie*, 873 F.2d 67 (4th Cir. 1989) ...................................................... 2

*Brady v. Maryland*, 373 U.S. 83 (1963) ......................................................................... 3

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979) ........................................................... 2, 3

*COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269 (4th Cir. 1999)........................... 12, 13

*Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211 (1979)........................ 6

*Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994) ............... 3, 4

*Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336 (D.C. Cir. 1984)......................... 9

*Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856 (D.C. Cir. 1981) 6

*Giglio v. United States*, 405 U.S. 150 (1972) ............................................................... 3

*In re Application of the United States*, 505 F. Supp. 25 (W.D. Pa. 1980) ...................... 7

*In re Grand Jury Investigation*, No. 87-2307, 1988 WL 98514 (D.N.J. Sept. 15, 1988)............... 7

In re Micron Tech. Inc. Sec. Litig., 264 F.R.D. 7 (D.D.C. 2010)............................... 9, 10

*In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988)....................................................... 9

*In re:  Air Cargo Shipping Servs. Antitrust Litig.*, 931 F. Supp. 2d 458 (E.D.N.Y. 2013) ............ 7

*Lopez v. Chertoff*, No. 07-1566, 2009 WL 1575209 (E.D. Cal. June 2, 2009)............................. 4

*Lopez v. DOJ*, 393 F.3d 1345 (D.C. Cir. 2005) ............................................................. 6

*Mak v. Federal Bureau of Investigation*, 252 F.3d 1089 (9th Cir. 2001) .................................. 4, 5

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ... 4

*S.E.C. v. Rajaratnam*, 622 F.3d 159 (2d Cir. 2010)....................................................... 9, 11

*Senate of Puerto Rico v. United States DOJ*, 823 F.2d 574 (D.C. Cir. 1987) .............................. 6

*Spence v. NCI Info. Sys., Inc.*, 530 F. Supp. 2d 739 (D. Md. 2008) ...................................... 12

*Tuite v. Henry*, 181 F.R.D. 175 (D.D.C. 1998)................................................................ 9, 10, 11

*United States ex rel Touhy v. Ragen*, 340 U.S. 462 (1951) ................................................ 2, 3

*United States v. Agurs*, 427 U.S. 97 (1976)................................................................... 3

*United States v. Diaz*, 236 F.R.D. 470 (N.D. Cal. 2006) ................................................... 6

*United States v. Foster*, 165 F.3d 689 (9th Cir. 1999)(en banc).......................................... 4

**UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER**

*United States v. Henson*, 123 F.3d 1226 (9th Cir. 1997) ........................................................ 4, 5

*United States v. Moten*, 582 F.2d 654 (2d Cir. 1978) ............................................................ 7, 8

*United States v. One Subpoena Served By Defendant Lopez Upon His Defense Attorney*, 2013

    WL 5775138 (S.D. Cal. Oct. 24, 2013) ...................................................................... 14, 15

*United States v. Salyer*, 2010 WL 3036444 (Aug. 2, 2010) .................................................... 12

*United States v. Sells Eng'g, Inc.*, 463 U.S. 418 ................................................................... 7

*United States v. Stanford*, 589 F.2d 285 (7th Cir. 1978) ........................................................ 6

*United States v. U.S. Dist. Ct. for N. Mariana Islands*, 694 F.3d 1051 (9th Cir. 2012) ................. 3

*United States v. Williams*, 170 F.3d 431 (4th Cir. 1999) .......................................................... 2

**Statutes**

12 U.S.C. §§ 3401-3422 ......................................................................................... 5

26 U.S.C. § 6103 ................................................................................................. 5

5 U.S.C. § 301 ................................................................................................... 2

5 U.S.C. § 552a .................................................................................................. 5

5 U.S.C. § 552a(a)(4) ........................................................................................ 8, 13

5 U.S.C. § 552a(b)(3) ........................................................................................... 8

5 U.S.C. § 706(2) ................................................................................................ 4

5 U.S.C. § 706(2)(A) ............................................................................................ 4

**Rules**

Fed. R. Civ. P. 26(b)(2)(C) ................................................................................... 14

Fed. R. Civ. P. 45 ............................................................................................ 1, 4

Fed. R. Crim. P. 6(e) ........................................................................................... 5

Fed. R. Crim. P. 6(e)(3)(F) ..................................................................................... 6

**Regulations**

21 C.F.R. §§ 20.1-.3 ............................................................................................ 5

26 C.F.R. §§ 301.9000-1 ........................................................................................ 5

28 C.F.R. § 16.21(a) ............................................................................................ 2

28 C.F.R. § 16.26(a)(1) ......................................................................................... 5

**UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER**

28 C.F.R. § 16.26(b) ................................................................................................ 3

28 C.F.R. § 16.26(c) ................................................................................................ 6

28 C.F.R. §§ 16.21-16.28 ........................................................................................ 2

28 C.F.R. §§ 16.26(a) ........................................................................................ 12, 16

7 C.F.R. §§ 1.210-.219 ............................................................................................ 5

Id. § 16.21(a)(2) ................................................................................................... 2, 3

**Other Authorities**

2011 WL 1790189 (E.D. Mich. May 10, 2011) ....................................................... 9

UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER

## I.   INTRODUCTION

This matter arises from a dispute over discovery served by plaintiffs on defendant Scott Salyer ("Salyer") and his counsel Segal & Associates (collectively "the Salyer defense").   *See* Salyer Pls.' Request for Production of Documents To Scott Salyer, Set One, Aug. 27, 2014 (Ex. 1 to the Affidavit of Matthew Segal ("Segal Aff."), filed herewith); Fed. R. Civ. P. 45 subpoena on Segal & Associates, Aug. 27, 2014 (Ex. 2 to Segal Aff.). The demands call for, among other things, production by the Salyer defense of material produced under a protective order[2] by the Department of Justice ("DOJ") to the Salyer defense in the criminal prosecution *United States v. Salyer*, No. 2:10-CR-00061 (E.D. Cal.) ("*United States v. Salyer*").[3]

The Salyer defense objected to that discovery on the grounds that "producing the documents would impose an unreasonable burden *and that the documents sought could more easily be obtained from the government*." Doc. 218 at 2 (emphasis added).[4]  Salyer's attorney stated at the December 3 hearing,

> We don't really have a dog in this fight and the burden on us of having to sort through our materials and then comply with . . . requirements the government sets . . . is unnecessary when the government has the materials and can make those decisions for itself. . . . I should not have to bear the burden of dealing with this issue.

Dec. 3, 2014 Tr. at 16: 1 – 7.

Contrary to counsel's assertions, plaintiffs and the Salyer defense are the dogs engaged in the fight.  The United States is not a party to this civil action, and plaintiffs have not served a

---

[2]  Stipulation and Protective Order Regulating Discovery, *United States v. Salyer,* No. 2:10-CR-00061 (Apr. 6, 2010), Doc. 69.  Ex. 3 to Segal Aff.  *See* discussion Section III(A), *infra*.

[3]  As noted by the Salyer defense during the December 3, 2014 discovery hearing, the documents at issue are electronic discovery provided to it and any hard copy documents actually physically delivered to it. Statement of Malcolm Segal, Tr. of Proceedings at 8:  11-15 ("Dec. 3, 2014 Tr."). Plaintiffs have also served subpoenas on Salyer's counsel Keker & Van Nest LLP and the Trustee for SK Foods Liquidating Trust, the successor to Salyer's company SK Foods, but have not moved to compel production for those subpoenas.  To the extent those subpoenas also call for the production of protected materials produced by DOJ in criminal discovery, the authorities and discussion contained herein apply to those demands as well.

[4] Unless otherwise indicated, docket entries refer to the instant case, *Morning Star Packing Co., L.P. v. SK Foods, L.P.*, No. 2:09-cv-208-KJM-EFB (E.D. Cal.).

**UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER**

subpoena on the United States.  Nevertheless, the Court solicited the views of DOJ through an amicus brief, "addressing any legal impediments to disclosing any documents in its possession that are responsive to plaintiffs' discovery requests."  Doc. 220 at 2.

Substantial legal impediments exist to production by the Salyer defense of information which was temporarily provided to them, subject to a protective order and for purposes of the criminal case.  Substantial legal impediments also exist to production by DOJ of material in its files.  In the interest of assisting in resolving this dispute, however, Section IV discusses ways in which plaintiffs may be able to lawfully access much of the material they desire.

II.   LEGAL IMPEDIMENTS TO PRODUCTION BY THE UNITED STATES

A.   The Touhy Regulations

The Federal Housekeeping Statute, 5 U.S.C. § 301, gives federal agencies statutory authority to prescribe regulations regarding production of official information for litigation.  Such regulations, commonly referred to as *Touhy* regulations, "centraliz[e] determination as to whether subpoenas . . . will be willingly obeyed or challenged," thus avoiding "possibilities of harm from unrestricted disclosure in court."  *United States v. Williams*, 170 F.3d 431, 433 (4th Cir. 1999) (quoting *United States ex rel Touhy v. Ragen*, 340 U.S. 462, 468 (1951).  *Touhy* regulations ensure uniform and well-considered responses to private litigants' requests for information, that responses will not cause injury to the government or the public, and that all requesters are treated equally.  An agency's regulations, "have the force and effect of federal law."  *Boron Oil Co. v. Downie*, 873 F.2d 67, 71 (4th Cir. 1989) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 295-96 (1979)).

DOJ's *Touhy* regulations, 28 C.F.R. §§ 16.21-16.28, "set[] forth procedures to be followed with respect to the production or disclosure of any material contained in [DOJ's] files" and any information acquired by a DOJ employee, "as a part of the performance of that person's official duties or because of that person's official status."  28 C.F.R. § 16.21(a). They apply "[i]n all federal and state proceedings in which the United States is not a party."  *Id*. § 16.21(a)(2).

UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER

Where, as here, DOJ is not a party to the litigation, DOJ's regulations *expressly prohibit* employees from producing material in the absence of a "subpoena, order, or other demand . . . of a court or other authority" to DOJ and, "without prior approval of the proper [DOJ] official." 28 C.F.R. §§ 16.21(a)(2), 16.22(a).  They also mandate that the responsible U.S. Attorney and originating components consider whether disclosure is appropriate under the rules of procedure governing the matter in which the demand arose, and whether disclosure is appropriate under the relevant substantive law concerning privilege.  *Id.* at § 16.26(a).  Moreover, the regulations proscribe production by any DOJ official when disclosure would violate a statute or the grand jury secrecy rule, or disclose investigatory records that would reveal investigative techniques and procedures and impair their effectiveness.  28 C.F.R. § 16.26(b).  These regulations dovetail with the purpose of criminal protective orders, such as the one entered in *United States v. Salyer*:  to allow limited disclosure of material in a criminal proceeding to protect the constitutional rights of the accused, *see e.g.*, *United States v. Agurs*, 427 U.S. 97 (1976); *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972), while at the same time preventing further unwarranted dissemination of sensitive information.

Because requests for material from government employees may drain agency resources, jeopardize privileged or confidential information, or adversely affect other agencies or the public interest, the regulations are essential.  As the Supreme Court explained:

> When one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas *duces tecum* will be willingly obeyed or challenged is obvious.

*Touhy*, 340 U.S. at 468; *see also United States v. U.S. Dist. Ct. for N. Mariana Islands*, 694 F.3d 1051, 1060 (9th Cir. 2012) (citing *Touhy* and the necessity for centralized decision-making in the executive branch).  Indeed, the Ninth Circuit Court of Appeals has acknowledged "the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations."  *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 779 (9th Cir.

UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER

1994).  Any materials in DOJ's possession which are relevant to plaintiffs' discovery requests are the precise type of materials that DOJ's regulations were promulgated to protect.  It is undisputed there has been no compliance in this case with DOJ's valid *Touhy* regulations.  As a result, there is no legal basis for production by DOJ.

Ninth Circuit precedent is clear that the Court may not independently order such production by DOJ.  *Mak v. Federal Bureau of Investigation*, 252 F.3d 1089, 1093 (9th Cir. 2001) ("In the absence of an actual demand (in the form of, e.g., a state court subpoena) . . . , the necessary steps have not been taken under the *Touhy* regulations to require [DOJ] to determine whether to release the information sought."); *United States v. Henson*, 123 F.3d 1226 (9th Cir. 1997) (affirming quashing of subpoena where defendant "did not follow the procedures for obtaining ATF records outlined in 27 C.F.R. §71.27(e)(4)"), *overruled on other grounds by United States v. Foster*, 165 F.3d 689 (9th Cir. 1999) (en banc); *Lopez v. Chertoff*, No. 07-1566, 2009 WL 1575209 (E.D. Cal. June 2, 2009) (agency not required to respond to subpoena where plaintiff did not follow proper *Touhy* procedures).

Moreover, even if the plaintiffs fully met the requirements of the DOJ's *Touhy* regulation and issued a Rule 45 subpoena, there would still be substantial substantive impediments to broad discovery of the DOJ investigative file, as discussed below.  In light of these concerns, tasking non-party DOJ to review and process the enormity of the criminal discovery in order to identify releasable information would be an undue burden in contravention of Federal Rule of Civil Procedure 45(d)(3)(A)(iii)-(iv).[5]

---

[5]  A refusal by DOJ to produce materials contained in its files would be reviewed under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).  Because no subpoena or *Touhy* request has been issued to DOJ, cases applying a Rule 45 balancing test, *e.g.*, *Exxon Shipping Co.*, 34 F.3d at 780, are inapplicable.  However, even were plaintiffs to follow the *Touhy* process, judicial review of the agency's determination would be under the APA.  Under the APA, a court will set aside the agency's decision only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  5 U.S.C. § 706(2)(A); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 44 (1983).  In *Mak*, the Ninth Circuit held that DOJ's actions in failing to disclose information were not "'arbitrary, capricious, an abuse of discretion,' or 'in excess of statutory . . . authority'" where, as here, there was no actual discovery demand on DOJ because "the necessary steps have not been taken under

**UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER**

B.      Sensitive and Privileged Information[6]

A substantial amount of sensitive information and privileged information is contained in the files sought by plaintiffs.[7]  The Antitrust Division and U.S. Attorney's Office disclosed in criminal discovery materials they had collected and/or prepared, as well as materials collected and/or prepared by the FBI (consensual and wiretap recordings, search warrants, memoranda of interviews, surveillance videos and photos, CDs regarding Salyer jail calls and visits), U.S. Department of Agriculture (USDA) (product testing results), U.S. Food and Drug Administration (FDA) (plant inspection results) and possibly Internal Revenue Service (IRS) (tax returns and return information).[8]  DOJ Discovery Letters and Indices.  If DOJ had been served with a subpoena and *Touhy* request, it likely would have declined to authorize any or all disclosure, based on undue burden and substantive prohibitions under applicable federal law and privilege, including Fed. R. Crim. P. 6(e), the Privacy Act of 1974 (5 U.S.C. § 552a), the Right to Financial Privacy Act (12 U.S.C. §§ 3401-3422), and the law enforcement privilege.  28 C.F.R.

---

the *Touhy* regulations to require [DOJ] to determine whether to release the information sought." 252 F.3d at 1093 (citing 5 U.S.C. § 706(2)); *see also Henson*, 123 F.3d at 1237 ("it was not an abuse of discretion to require [defendant] to follow the prescribed regulations").

[6]  In order to respond to the Court's Order, the government identifies below some categories of sensitive and privileged information which are likely to be contained both in the files of the DOJ relating to the underlying investigation and in the criminal discovery materials that were produced to the Salyer defense in the criminal trial.  However, nothing in this discussion should be construed as either an assertion or waiver of any applicable government privilege.

[7]  For example, plaintiffs request production by the Salyer defense of, *inter alia*, all material relating to any grand jury proceedings, grand jury subpoenas, tape recordings, transcripts and recordings of any interviews and wire taps, and all other documents that were "*given* to [the Salyer defense] by any governmental authority," during the criminal proceedings. Ex. 1 to Segal Aff., Request Nos. 7, 9-14; Ex. 2 to Segal Aff., Request Nos. 2-7 (emphasis added).  *See also* Ex. A-G ("DOJ Discovery Letters and Indices"), United States' Memo. in Opp'n to Def.'s Mo. for Pretrial Discovery ("DOJ Discovery Mo. Opp'n"), *United States* v. *Salyer*, Doc. 110-1 (containing criminal discovery letters and indices).

[8]  The IRS, FDA, and USDA have their own *Touhy* regulations that must be complied with to seek their records.  26 C.F.R. §§ 301.9000-1 – 301.9000-7; 21 C.F.R. §§ 20.1-.3; 7 C.F.R. §§ 1.210-.219.  Plaintiffs have made no requests to these agencies for their records.  Moreover, under 26 U.S.C. § 6103, returns and return information may not be disclosed unless a specific exception in § 6103 applies.   The plaintiffs have not shown that an exception applies.

UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER

§ 16.26(a)(1), (b)(1), (b)(5).  Further, there does not appear to be any basis to support a determination that the administration of justice requires disclosure.  28 C.F.R. § 16.26(c).

On their face, plaintiffs' requests call for grand jury subpoenas and information obtained via grand jury subpoenas and other compulsory process.  Grand jury subpoenas are matters occurring before the grand jury and clearly protected from disclosure by Rule 6(e).  *Lopez v. DOJ*, 393 F.3d 1345, 1349 (D.C. Cir. 2005); *United States v. Diaz*, 236 F.R.D. 470, 479-80 (N.D. Cal. 2006).  Grand jury exhibits are also clearly matters occurring before the grand jury protected by Rule 6(e).  Disclosing the enormous volume of material sought would, in effect, be a disclosure of grand jury proceedings.  *See Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 868-70 (D.C. Cir. 1981) (information revealing "the scope, focus and direction of the grand jury investigations" properly withheld under Rule 6(e)); *see also United States v. Stanford*, 589 F.2d 285, 291 n.6 (7th Cir. 1978) ("general request for 'all documents collected or received in connection with [grand jury] investigation . . .' would be in effect a disclosure of the grand jury proceedings").  *But see Senate of Puerto Rico v. United States DOJ*, 823 F.2d 574, 581-84 (D.C. Cir. 1987) (request for all evidence collected by DOJ not *per se* too broad so as to reveal what occurred before grand jury).

To obtain an order lifting Rule 6(e) prohibitions, plaintiffs must show a particularized need for material sought, i.e. the material is "needed to avoid a possible injustice in another . . . proceeding," that this need outweighs the need for grand jury secrecy, and that their request is narrowly tailored "to cover only material so needed."  *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979).[9]  In addition, plaintiffs purport to show a particularized

---

[9]  Fed. R. Crim. P. 6(e)(3)(F) ("A petition to disclose a grand-jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury convened.").  The Supreme Court has noted "in general, requests for disclosure of grand jury transcripts should be directed to the court that supervised the grand jury's activities" and "[i]deally, the judge who supervised the grand jury should review the request for disclosure."  *Douglas Oil Co.*, 441 U.S. at 225-26.  The Court further noted, however, that "other judges of the district where the grand jury sat may be able to discover facts affecting the need for secrecy more easily than would judges from elsewhere around the country" and the need for "coordinating of the informed views of both the civil trial court and the grand jury court concerning the propriety of disclos[ure]."  *Id.* at 226-28.

UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER

need because the Salyer criminal case and their case have "overlapping issues" and "significant factual overlap," concern "the same acts," and hence the criminal discovery is "directly relevant" to plaintiffs' case. Memo. of Points and Authorities in Support of Pls.' Pet. Pursuant to Fed. R. Crim. P., Rule 6(e) for Disclosure of Grand Jury Materials at 4, (Nov. 26, 2014), Doc. 213-1; Declaration of James Kachmar in Support of Pls.' Pet. Pursuant to Federal Rules of Criminal Procedure, Rule 6(e) for Disclosure of Grand Jury Materials at 2 (Nov. 26, 2014), Doc. 213-2. However, relevancy and assistance with a civil case do not establish the particularized need required for disclosure of Rule 6(e) material. *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 445 ("[S]tatement that the grand jury materials sought are rationally related to . . . civil fraud suit to be brought by the Civil Division," was insufficient to justify disclosure to DOJ civil attorneys.); *In re Grand Jury Investigation*, No. 87-2307, 1988 WL 98514, at *4 (D.N.J. Sept. 15, 1988) (mere aid insufficient); *In re Application of the United States*, 505 F. Supp. 25, 27 (W.D. Pa. 1980) (relevancy "merely a *minimal first step*").

Further, plaintiffs' discovery demands are not narrowly tailored to cover only material to satisfy the alleged need, nor have they shown a lack of access to desired evidence through other means, including prior subpoenas to other defendants, prior depositions, and publicly available information. *See In re: Air Cargo Shipping Servs. Antitrust Litig.*, 931 F. Supp. 2d 458, 468 (E.D.N.Y. 2013) (sustained objections to disclosure of limited excerpts of testimony of two grand jury witnesses, holding "'[N]eed' . . . '[p]resumably . . . refers to the ability of the party seeking disclosure to obtain the information he seeks from sources other than the protected source.' . . . '[I]t would seem that a party's need varies in proportion to the degree of access he has to other sources of the information he seeks.'") (citing *United States v. Moten*, 582 F.2d 654, 663 (2d Cir. 1978)). Substantial relevant information is available from the criminal case public docket, including quotations of key conversations from consensual and wiretap recordings and evidence constituting probable cause for searches and wiretaps, and plaintiffs seemingly have not

In addition, Rule 6(e)(3)(F) requires an attorney for the government be given "a reasonable opportunity to appear and be heard."

UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER

exhausted their discovery opportunities from this source.[10]  For example, one item that plaintiffs' counsel has argued is particularly needed is located on the public docket.  Ex. A-17 at 9 (tomato usage matrix), Doc. 164-8, to Memo. of Points and Authorities in Supp. of Def.'s Mo. to Suppress Evidence of Warrantless Searches, *United States v. Salyer*, (July 20, 2010), Doc. 145. It is plaintiffs', not non-party DOJ's, job to find this material.

Beyond Rule 6(e) concerns, the criminal protective order and DOJ Discovery Letters and Indices show that the criminal discovery produced to the Salyer defense also contains substantial information protected from disclosure by the Privacy Act.  The Privacy Act prohibits federal agencies from disclosing, without the affected individual's written consent or court order, "any . . . information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number . . . or other identifying particular assigned to the individual, such as a . . . voice print or a photograph."  5 U.S.C. § 552a(a)(4).  The produced criminal discovery is full of such information, including the consensual and wiretap recordings, which include individuals' names and consist entirely of individuals' voices; bank records; tax records; photographs; videos; names and other personal information such as education and employment history in interview memos; names, phone numbers, and email and other addresses in emails, including entire inboxes; and voicemail recordings.[11]  DOJ Discovery Letters and Indices (Ex. E and G), *United States v. Salyer*.

Substantial audio and/or video surveillance of individuals was produced without redactions by DOJ, increasing privacy concerns.  *See, e.g., id.* at 1 ("Individual CDs of audio

---

[10]  *See, e.g.*, Memo. in Opp'n to Mo. to Suppress Fruits of Illegal Wiretaps or Suppression under *Franks v. Delaware*, *United States v. Salyer*, (Aug. 10, 2010), Doc. 193 (including as Ex. 1-4 wiretap affidavits); DOJ Discovery Mo. Opp'n, *United States v. Salyer*, Doc. 110; Aff. of Special Agent Paul S. Artley In Support of Arrest Warrant and Criminal Complaint, *United States v. Salyer*, Case 2:10-mj-00002-DAD (E.D. Cal. Jan. 5, 2010), Doc. 1; Appl. and Aff. for Search Warrants, *In the Matter of the Search of SK Foods*, Case 2:08-sw-00123-DAD (E.D. Cal. April 15, 2008), Doc. 1.

[11]  DOJ provided the materials to the Salyer defense pursuant to a routine use exemption for criminal prosecution under the Privacy Act.  5 U.S.C. § 552a(b)(3).  That routine use does not apply to third-party discovery in a civil suit.

UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER

recordings") and 4 ("Video – Surveillance").  In addition, plaintiffs' discovery demands on the Salyer defense are not limited to specific relevant conversations.  *See S.E.C. v. Rajaratnam*, 622 F.3d 159, 184-87 (2d Cir. 2010) (vacating order for disclosure by civil defendant to *another government agency* in civil enforcement proceeding because privacy concerns "must be carefully weighed before discovery is ordered" and court failed to limit disclosure to relevant conversations); *see also In re Packaged Ice Antitrust Investigation*, No. 08-md-01952 at *6, 2011 WL 1790189 (E.D. Mich. May 10, 2011) (Court ordered *in camera* review to determine whether privileges applied.).

DOJ's investigatory files relating to this matter are protected by the law enforcement privilege, "a qualified privilege 'designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement." *In re Micron Tech. Inc. Sec. Litig.*, 264 F.R.D. 7, 10 (D.D.C. 2010) (quoting *Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998); *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984).  The privilege is qualified, requiring the Court to balance the discovering party's need for particular documents against the public interest in non-disclosure. *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988).  The *Tuite* case set forth ten factors which a court should consider in weighing the competing interests.[12]  However, "[w]hile the *Tuite* factors may call for disclosure in a criminal trial . . . the same need not be true in a civil suit for damages." *In re Micron Technologies, Inc.*, 264 F.R.D. at 11.

---

[12]  Those factors are:  (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding pending or reasonably likely to follow from the incident in question; (6) whether the investigation is concluded; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is nonfrivolous and brought in good faith; (9) whether information sought is available through other discovery or sources; and (10) the importance of information sought to plaintiff's case. *Tuite*, 181 F.R.D. at 177.

**UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER**

The first *Tuite* factor strongly favors protection of the materials produced to the Salyer defense:  release of this material to a third-party would have a significant impact on DOJ's ability to obtain information. Just as the DOJ's Office of Professional Responsibility's ("OPR") investigation at issue in *Tuite* was dependent "upon the cooperation of witnesses who may be questioned concerning highly sensitive matters," DOJ's investigations are dependent on the cooperation of witnesses who may be admitting to criminal conduct.  *Tuite,* 181 F.R.D. at 179. For example, wholesale disclosure of materials such as all interview memoranda and undercover tapes made by cooperating witnesses outside the context of criminal prosecutions would discourage witnesses in future investigations from engaging in wide ranging conversations needed in grand jury investigations to ferret out criminal conduct.  When such information is disclosed in criminal prosecutions, "it is virtually always through a protective order that-as Plaintiffs themselves are aware-prevents broad disclosure of the information.  If insiders . . . were put on notice that any information they give could be subpoenaed and used against them in a civil suit for damages, then the Antitrust Division's investigative capacity would surely suffer." *In re Micron Technology Inc.*, 264 F.R.D. at 11 (upholding, under law enforcement privilege, non-disclosure in civil suit of memoranda of interviews compiled in Antitrust Division grand jury investigation despite production of the materials in criminal discovery).[13]  As in *Micron,* the Salyer investigation involved disclosure in criminal discovery of information from an applicant under the Antitrust Division's Corporate Leniency Policy.  *Micron* recognized "it is readily apparent that a refusal to recognize the law enforcement privilege for information obtained through the DOJ Antitrust Division's leniency program would chill future informants from coming forward. The Antitrust Division's investigations depend heavily on the willingness of insiders to voluntarily provide information. Such information is, of course, given in great part as a result of the DOJ's assurance of confidentiality."  *Id.* at 10.

---

[13]  Even if an individual's cooperation was revealed in the criminal case, disclosure of the protected criminal discovery materials would reveal considerable additional personal background information about that person, the identities of unindicted coconspirators, exonerated persons, and/or individuals only peripherally involved or completely uninvolved in the criminal conduct.

UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER

Under the fourth factor, while some of the criminal discovery, such as the tapes, do contain factual data, they also reveal the FBI and prosecutor's evaluation of what evidence to pursue from whom.  The tapes were prepared at the direction of the FBI and followed the investigative strategy of the FBI and prosecutors.  Wholesale disclosure of the tapes "would reveal law enforcement techniques and investigative evaluations," the pattern of the investigation, tracing the investigation from person to person, issues believed by the investigators to be of particular interest, different theories of the case, as well as particular investigative techniques used in making the consensual recordings.  *Tuite*, 181 F.R.D. at 180.

Although the underlying criminal investigation has been completed, as in *Tuite,* "the interest in nondisclosure remains strong despite the conclusion of the investigation due to the very nature of the investigation" and the large amount of the criminal investigative file requested.  *See Tuite*, 181 F.R.D. at 181.  The ninth factor also weighs against disclosure; the information sought is available through other sources.  Plaintiffs have not shown why the information available on the public record from the criminal case is insufficient to meet their needs.  The last factor, whether the materials are important to plaintiffs' case, also favors nondisclosure.  Plaintiffs can obtain quotations of key portions of key recordings from the public record in the criminal case, and they have not shown that they need all of the produced criminal discovery or even all of the consensual recordings for their case.  *See S.E.C. v. Rajaratnam*, 622 F.3d 159 (2d Cir. 2010) (reversing disclosure order because district judge did not determine the relevant conversations to be disclosed).  In addition, DOJ has facilitated disclosure of a large volume of additional evidence, as discussed in Section IV.

The factors that are not applicable here -- the third, fifth, seventh, and eighth -- do not militate in favor of disclosure. None of these factors were present in *Tuite*, and yet the court still held that the documents should not be disclosed.  *See Tuite*, 181 F.R.D. at 180-81, 184-85. The same reasoning should apply here.  Plaintiffs do not need the evidence to garner the truth of the illegal conduct, while wholesale disclosure of the criminal discovery materials would strongly

damage the ability to pursue investigations in the future.  Thus, *Tuite* factors weigh against disclosure under the law enforcement privilege.  *See* 28 C.F.R. §§ 16.26(a), (b)(5).

C.     Burden

Reviewing the material for production would be an enormously time-consuming task for DOJ.  Over the approximate five-year grand jury investigation, DOJ collected a massive amount of information, including electronic information of multiple gigabytes, consisting of millions of pages. See *United States v. Salyer*, 2010 WL 3036444, at *3 n.3 (Aug. 2, 2010) (citation omitted); *see also* DOJ Discovery Letters and Indices (Ex. E at 17, 23), *United States v. Salyer* (production of 400 gigabyte hard drive).  To identify all privileged and statutorily protected information in DOJ's investigative files would require careful review of millions of documents and hundreds of hours of audio/video recordings. This review would have to be performed by law enforcement personnel whose mission is to investigate violations of the laws of the United States and not to serve as paralegal staff to civil litigants engaged in private disputes.

To require DOJ to review the criminal discovery materials for individual documents or portions thereof covered by statutory and common law protections would be an extraordinary burden on the non-party government and set a dangerous precedent.  Civil damages actions routinely follow white collar criminal cases.  DOJ affords broad discovery to allow a criminal defendant to prepare its case, often under a protective order limiting use of such discovery to the criminal case.  A precedent embroiling the government in private disputes would greatly tax limited DOJ resources and divert resources from core law enforcement duties.  Courts have recognized that "federal agencies have a compelling interest in 'conserv[ing] governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business.'"  *Spence v. NCI Info. Sys., Inc.,* 530 F. Supp. 2d 739, 745 (D. Md. 2008) (citation omitted); *see also COMSAT Corp. v. Nat'l Sci. Found.,* 190 F.3d 269 (4th Cir. 1999).  Thus, "[t]o effectively further this interest, federal agencies must be permitted to consider the precedential effects of granting individual discovery requests."  *Spence*, 530 F. Supp. 2d at 745 (finding agency's decision that request was

UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER

unduly burdensome based on cumulative effect was reasonable); *COMSAT*, 190 F.3d at 278

(noting the potential "limitless number of private litigants who might seek to draw upon NSF's

expertise, and the potential cumulative burden upon the agency").

     III.     <u>LEGAL IMPEDIMENTS TO PRODUCTION BY DEFENDANT SALYER</u>

     A.     <u>Criminal Protective Order</u>

     The Salyer defense may not produce to plaintiffs materials it was given access to in

criminal discovery, because such disclosure is prohibited by the protective order.  In the *Salyer*

criminal case, the protective order provides that material "contain[ing] names and personal

identifying information ["PII"] . . . includ[ing], but . . . not limited to, addresses, telephone

numbers, driver's license numbers, social security numbers and bank account numbers":

> 3.  *[I]s now and will forever remain the property of the United States*.  The
> Protected Material is entrusted to counsel for the defendant only for purposes of
> representation of this case.
> 7.  *The defendant in this case [Salyer] . . . shall not be given control of the
> Protected Material or any copies thereof.* . . .
>
> 8.  Within twenty days of sentencing or dismissal of defendant's case, or the
> conclusion of any appeals or litigation ancillary to the criminal case, defendant's
> counsel shall destroy the Protected Material, and any copies of Protected Material,
> and shall so certify to the attorney for the government by letter.

No. 2:10-CR-00061, Doc. 69 at 1-3, (Ex. 3 to Segal Aff.) (emphasis added).  As noted above, the

DOJ Discovery Letters and Indices (Ex. E and G) , *United States v. Salyer*, show that much PII[14]

is contained in the criminal discovery (consensual and wiretap recordings, which include

individuals' names and consist entirely of individuals' voices; bank records; photographs;

videos; names and other personal information such as education and employment history in

interview memos; names, phone numbers, and email and other addresses in emails, including

entire inboxes; and voicemail recordings).

     To obtain criminal discovery, the Salyer defense specifically agreed to be bound by the

protective order.  Under Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv), a district court must quash a

---

[14] *See* 5 U.S.C. § 552a(a)(4).

**UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER**

subpoena "requir[ing] disclosure of privileged or other protected matter," or "subject[ing] a person to undue burden."  To the extent plaintiffs' demands call for production of material covered by the criminal protective order, the court should quash the demands. *United States v. One Subpoena Served By Defendant Lopez Upon His Defense Attorney*, 2013 WL 5775138, at *2 (S.D. Cal. Oct. 24, 2013) (quashing civil subpoena on defense attorney for criminal discovery material, holding it was "protected matter" under Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv) due to protective order and that undue burden was placed on attorney); *see also Douglas Oil Co.*, 441 U.S. 221, 225 n.17 (noting it was "questionable whether the . . . [c]ourt [presiding over the civil action] properly could have ordered production of the documents in direct violation of the California District Court order" in the criminal case, which required use of the materials only to defend the criminal case and return of the materials at the end of the criminal case).

### B.   Sensitive and Privileged Information

The Salyer defense may not produce to plaintiffs the materials to which it was permitted access in criminal discovery, because the materials contain information which is subject to government privileges and other statutory protections.  *See supra* Section II.B.  These materials are not Salyer's to disclose; the government privileges were not destroyed by virtue of the protected criminal discovery, and Salyer may not invoke government privileges.  Therefore, all of the legal impediments to production by DOJ, identified above in Section II.B., are also legal impediments to production by Salyer.  Because it is not possible for the Salyer defense to comply with plaintiff's discovery demands and at the same time ensure against improper disclosure of the sensitive and privileged material which is contained in the protected criminal discovery materials, the court should foreclose further consideration of production by the Salyer defense of any criminal discovery materials.  Fed. R. Civ. P. 26(b)(2)(C), 45(d)(3)(A)(iv).

### IV.   PLAINTIFF'S OFFER TO LIMIT THE PROPOSED DISCOVERY

As DOJ suggested during the December 3, 2014 hearing, it has conferred with plaintiffs to assist in resolving this dispute.  On December 10, plaintiffs offered to limit discovery pursuant to the instant demands served on the Salyer defense to (1) corporate notebooks/journals compiled

UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER

by executives of Salyer's company SK Foods, (2) a tomato paste use matrix used at SK Foods showing sales volumes by tomato paste manufacturers, and (3) consensual recordings of meetings made by a co-defendant in the criminal case and associated transcripts.

Because DOJ no longer needs ready access to the materials described in (1) and (2) for use in the criminal prosecution, DOJ has determined that it can return these materials, which it obtained as evidence in the criminal investigation, to SK Foods Liquidating Trust, the successor of the original corporate owner of the documents, SK Foods.  Plaintiffs have served the trust's Trustee with a subpoena  to which these materials maybe responsive.  Ex. 4 to Segal Aff., Letter from Schnader Attorneys at Law to AUSA Matthew Segal (Oct. 29, 2014) (enclosing subpoena).  In the interest of efficiency, the Trustee has authorized DOJ to transfer the materials described in items (1) and (2), the journals and the tomato paste usage matrix, which was already in the public docket, directly to plaintiffs' counsel, rather than return them first to the Trustee (who would then produce them to plaintiffs' counsel).  *Id.*

Moreover, DOJ has determined that it no longer has an investigative need to retain *any* of the materials seized from SK Foods by the FBI in the grand jury investigation.  *See* DOJ Discovery Letters and Indices (Ex. E), *United States v. Salyer*; Dec. 3, 2014 Tr. at 4-5.  In the interest of assisting in resolving this dispute and of expediting lawful disposition of evidence in the criminal case, DOJ is also willing to return all materials seized from SK Foods to their lawful possessor, the Trustee.  The Trustee has authorized plaintiffs' counsel to take possession of these materials.  Ex. 5 to Segal Aff., Email from Schnader Attorneys at Law to AUSA Matthew Segal (Nov. 11, 2014).  Accordingly, DOJ today moved for an order from the criminal court allowing it to return, subject to certain conditions, these materials to the custodian designated by the Trustee, counsel for the Morning Star plaintiffs.  Returning these materials gives plaintiffs very substantial additional discovery and makes it more difficult for them to show need for other materials.

As for item (3), however, DOJ cannot agree to the release of the consensual recordings and associated transcripts.  Unlike the materials in (1) and (2), which were created by the

UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER

individual or corporate defendants in the case, the recordings and transcripts were made with the assistance and under the direction of the FBI and are property of the FBI. The recordings, transcripts, and any other material created by the FBI during the criminal investigation contain sensitive information which is subject to the privileges and statutory protections enumerated above.  A DOJ review of the recordings and transcripts to redact such privileged and protected portions would impose an undue burden and be unreasonably cumulative and duplicative of discovery otherwise available.  28 C.F.R. §§ 16.26(a), (b)(1), (b)(5).  In addition, to the extent transcripts were not produced in criminal discovery, they are not responsive to plaintiffs' discovery demands to the Salyer defense.

## V. CONCLUSION

As shown above, substantial legal impediments exist to disclosing information in DOJ's and the Salyer defense's possession to the parties in this civil action.  However, in the interest of judicial economy, DOJ has voluntarily taken action to facilitate resolution of this dispute by allowing for the expeditious return of an enormous amount of materials currently in its possession to their lawful possessor, which material will be available to plaintiffs.

Respectfully Submitted,

*/s/  Stefania M. Porcelli*
Stefania M. Porcelli
Virginia Bar No. 36505
Federal Bureau of Investigation
1110 3rd Avenue
Seattle, Washington  98101
Email:  Stefania.Porcelli@ic.fbi.gov
Telephone:  206-262-2224

*/s/  Belinda A. Barnett*
 Belinda A. Barnett
  Alabama Bar No. ASB-6575-T82B
  Deputy General Counsel, Criminal
  U.S. Dept. of Justice, Antitrust Division
  950 Pennsylvania Ave. NW, Rm 3218
  Washington, D.C. 20530
   Email:  Belinda.Barnett@usdoj.gov
 Telephone:  202-616-0955

BENJAMIN B. WAGNER
United States Attorney
By: */s/ Matt Segal*
 MATTHEW D. SEGAL
 State Bar No. 190938
Assistant U.S. Attorney

*/s/  Anna T. Pletcher*
Anna T. Pletcher
State Bar No. 239730
Trial Attorney
U.S. Dept. of Justice, Antitrust Division
450 Golden Gate Ave., Rm 10-0101
Box 36046
San Francisco, CA 94102
Email:  Anna.Pletcher@usdoj.gov
Telephone:  415-934-5349

**UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**UNITED STATES' AMICUS BRIEF IN RESPONSE TO DECEMBER 15, 2014 ORDER**