
UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE MORNING STAR PACKING COMPANY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SK FOODS, L.P, et al.,<br><br>Defendants. | No. 2:09-cv-00208-KJM-EFB<br><br><br>ORDER |

In January 2009, plaintiffs Morning Star Packing Company, Liberty Packing Company, California Fruit & Tomato Kitchens, LLC, and The Morning Star Company (collectively Morning Star), all low-cost producers in the tomato processing industry, filed suit against several defendants, including competitors Ingomar Packing Company and Ingomar's president Greg Pruett, Los Gatos Tomato Products and its president Stuart Woolf, and SK Foods and its president Scott Salyer. Discovery closed in February 2015, but Morning Star has moved to reopen discovery for the limited purpose of taking discovery from Scott Salyer, one of the key defendants and witnesses in this suit.

Defendants disagree that discovery should be reopened, and oppose Morning Star's motion. The court submitted the motion without a hearing on July 25, 2016, ECF No. 302,

/////

and for reasons explained below, GRANTS IN PART Morning Star's motion to reopen discovery.

I.   BACKGROUND AND PROCEDURAL HISTORY

Morning Star commenced this action on January 22, 2009, filed a first amended complaint on January 29, 2010, and filed the operative second amended complaint on December 16, 2010.  ECF Nos. 1, 100, 116.

After several rounds of motion practice, the court set a pre-trial status conference for May 30, 2013, ECF No. 144, and the parties submitted a joint status report on May 16, 2013, ECF No. 143.  In the report, the parties noted Scott Salyer, as a defendant in the criminal case of *United States v. Salyer*, Case No. 10-cr-00061 (E.D. Cal. filed Feb. 18, 2010)[1] would assert his Fifth Amendment privilege against self-incrimination in response to discovery and otherwise would not respond to Morning Star's suit.  Joint Status Report (JSR) 2–3, ECF No. 143.

The court noted Salyer's position in its scheduling order and ordered Salyer's counsel to notify the court within seven days after restitution proceedings concluded.  Scheduling Order 2, ECF No. 148.  The court otherwise ordered all non-expert discovery be completed by March 28, 2014.  *Id.*  After several stipulations to continue the completion date for discovery, *see* ECF Nos. 160, 162, 178, all non-expert discovery was to be completed by December 8, 2014, ECF No. 181.  The court extended discovery one more time, from December 8, 2014 to February 11, 2015, ECF No. 220.

On or about May 15, 2015, three months after discovery ended, defendants Greg Pruett and Ingomar (collectively Ingomar) filed a motion for summary judgment.  ECF No. 250.

/////

---

[1] The court *sua sponte* takes judicial notice of matters in the criminal case.  A court "may take judicial notice of matters of public record, including duly recorded documents, and court records available to the public through the PACER system via the internet."  *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1116 (C.D. Cal. 2010) (citing *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1123, 1138 (E.D. Cal. 2009) (internal citations omitted)).  The PACER system is a court generated database that provides public access to court electronic records.  *Black's Law Dictionary* 550 (4th pocket ed. 2011).

Defendants Los Gatos and Stuart Woolf (collectively Los Gatos) filed a motion for summary judgment as well, ECF No. 285, and both motions are currently pending.

On March 31, 2016, the district judge then assigned to the criminal case adopted in full the magistrate judge's findings and recommendations on restitution. *See United States v. Salyer*, ECF 685. Seventy-six days later, on June 15, 2016, Salyer's counsel notified the court of the completion of restitution proceedings. ECF No. 297. Two days later, Morning Star moved to reopen discovery and set a new cutoff date of October 31, 2016. Mot., ECF No. 298. Defendants Scott Salyer, Ingomar Packing Company, and Los Gatos Tomato Products oppose Morning Star's motion. Salyer Opp'n, ECF No. 299; Ingomar and Los Gatos Joint Opp'n, ECF No. 300. Morning Star has replied. Reply, ECF No. 301.

II.    DISCUSSION

Morning Star moves to reopen discovery for the limited purpose of taking Salyer's deposition, propounding one set each of interrogatories, requests for admission and document requests, and engaging in appropriate follow-up discovery if necessary. Mot. at 2. Morning Star contends this discovery is needed to prepare the case for trial and potentially to supplement the evidence before the court on the pending motions for summary judgment. *Id.* at 4. Morning Star contends good cause exists to grant its motion because of its prior inability to conduct discovery against Salyer. *Id.* at 2–3.

Ingomar and Los Gatos contend no good cause exists to reopen discovery because the very restitution proceedings that prompted Salyer to invoke his Fifth Amendment privilege were of Morning Star's own making. Joint Opp'n at 2. Further, Ingomar and Los Gatos contend Morning Star does not identify any specific evidence it believes it can obtain if the court allows the requested discovery. *Id.* at 3. Lastly, Ingomar and Los Gatos contend further discovery, if granted, would prejudice defendants by requiring the parties to expend additional resources and suffer additional delay. *Id.* at 7.

Defendant Salyer opposes Morning Star's motion because at the time of filing his opposition he was in the custody of the federal Bureau of Prisons, in community confinement at a halfway house in Fresno, California. Salyer Opp'n at 1. He argues his need to conform to the

3

1  halfway house schedule, rules, and regulations precluded him from effectively participating in
2  discovery. *Id.* at 1–2. Defendant Salyer also contends discovery should be precluded because he
3  remains at risk of prosecution by public authorities in the principality of Andorra, who are
4  investigating Salyer's possession of funds connected to a criminal fraud offense. *Id.* at 2. The
5  funds are the same funds Salyer agreed to forfeit in his plea agreement with the government
6  resolving his criminal case in this district. *Id.*, Ex. 1 at 6.

7  The court first addresses Morning Star's request related to supplementing the
8  record on the pending summary judgment motions, and then discusses Morning Star's request as
9  related to supplementing the record for trial.

10  A.  <u>Request to Supplement the Record on Pending Summary Judgment Motions</u>

11  Morning Star seeks further discovery in part to supplement the evidence before the
12  court on the pending motions for summary judgment. Mot. at 4. Defendants Ingomar and Los
13  Gatos contend Morning Star has not identified any specific evidence Morning Star believes it can
14  obtain through discovery from Salyer that it has not already obtained elsewhere. Opp'n at 7.

15  When seeking additional discovery in connection with a summary judgment
16  motion, the moving party must proffer sufficient facts to show the evidence sought exists, and
17  that such evidence would prevent summary judgment. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d
18  1151, 1161 (9th Cir. 2001). In *Chance*, after discovery ended, and before the district court ruled
19  on a pending summary judgment motion, the plaintiff sought to depose several witnesses the
20  defendant had identified in a joint witness list submitted to the court. *Id.* After the parties filed a
21  joint stipulation regarding their dispute over the witness depositions, and before resolving the
22  dispute, the district court resolved the pending motion in the defendant's favor. *Id.* The plaintiff
23  appealed the summary judgment decision to the Ninth Circuit, contending the district court erred
24  by depriving plaintiff of the opportunity to discover additional crucial evidence that would have
25  "assisted it in convincing the district court that disputed facts existed precluding summary
26  judgment." *Id.* The Ninth Circuit affirmed the district court, concluding it did not abuse its
27  /////
28  /////

discretion for several reasons, including that the plaintiff "never actually filed a Rule 56(f)[2] motion to delay consideration of the pending summary judgment motion," and did not "proffer to the district court—or make a showing here on appeal—sufficient facts to show that evidence which it sought existed and would prevent summary judgment." *Id.* Only if the plaintiff had diligently pursued its previous discovery opportunities, and shown how allowing additional discovery would have precluded summary judgment, would the district court have abused its discretion in granting summary judgment to the defendant. *Id.* at 1161 n.6 (citing *Byrd v. Guess*, 137 F.3d 1126, 1131 (9th Cir. 1998)). In the end, the district court's summary judgment decision was affirmed. *Id.* at 1161.

Here, to support its motion to reopen discovery, Morning Star cites to the briefs it already filed in opposition to Ingomar's and Los Gatos's motions for summary judgment. *See* Mot. at 8 (citing Pls.' Opp'n to Ingomar's Mot. Summ. J., ECF No. 260; Pls.' Opp'n to Los Gatos Mot. Summ. J., ECF No. 289). But as in *Chance*, Morning Star "never actually filed a Rule 56[(d)] motion to delay consideration of the pending summary judgment motion." *Chance*, 242 F.3d at 1161. Further, similar to the plaintiff in *Chance*, Morning Star proffers no additional facts it could obtain that would alter the result on summary judgment. *See id.* The court denies Morning Star's request to reopen discovery to supplement the record on summary judgment. *See Chance*, 242 F.3d at 1161; *see also Cal. Union Ins. Co. v. Am. Diversified Sav. Bank*, 914 F.2d

---

[2] Rule 56 has since been amended, and the analogous provision to Rule 56(f) is now Rule 56(d); *Greer v. Lockheed Martin Corp.*, 855 F. Supp. 2d 979, 985 (N.D. Cal. 2012). Rule 56(d) states in part,

> d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

1271, 1278 (9th Cir. 1990) ("The district court does not abuse its discretion by denying further discovery if . . . the movant fails to show how the information sought would preclude summary judgment.").

### B. Request to Supplement Record for Trial

Defendants also oppose Morning Star's request for discovery to supplement the record in preparation for trial. Joint Opp'n at 2; Salyer Opp'n at 1. In particular, Salyer contends further discovery should be precluded because of his fear of prosecution by Andorran public authorities, and the logistical challenges posed by his community confinement in Fresno identified as ending on November 30, 2016. Salyer Opp'n at 1, 2; Salyer Opp'n Ex. 1 at 6.[3] Ingomar and Los Gatos contend Morning Star shows no good cause to reopen discovery, Morning Star points to no new information that would likely be uncovered in discovery, and further discovery would be prejudicial. Joint Opp'n at 2–7.

#### 1. Salyer's Opposition

##### a) Fear of Foreign Prosecution

Salyer contends further discovery should be precluded because of his fear of foreign prosecution. Salyer Opp'n at 2. As noted, Salyer contends Andorran officials have accused him of having in his possession money proceeds of a criminal fraud offense, transmitting those proceeds to Andorra, and attempting to purchase property while disguising and concealing the illicit origin of the funds. *Id.* Ex. 1 at 6. According to a letter the United States Department of Justice (DOJ) sent Mr. Salyer on behalf of Andorran officials, Salyer was advised that under Andorran law he was entitled "to be informed about the accusation, not to admit guilt, not to otherwise incriminate himself, to be defended and assisted by a lawyer, to meet with that lawyer before making any statement, and to decline making any statement." *Id.* Because of the pending Andorran investigation and accusation, Salyer contends he must and will assert his Fifth Amendment privilege in response to any requests for discovery in this case. Salyer Opp'n at 2.

---

[3] As of the date of this order, Salyer has not notified the court his circumstances have changed, or that Salyer has been released from confinement.

6

1   Morning Star contends Salyer cannot claim a privilege due to the threat of foreign prosecution
2   under the circumstances presented here. Reply at 3. In particular, Morning Star contends
3   "nothing. . . suggest[s] any possibility of . . . prosecution against Salyer in the U.S." *Id.*
4          The Fifth Amendment privilege against self-incrimination "'can be asserted in any
5   proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory,' in which
6   the witness reasonably believes that the information sought, or discoverable as a result of his
7   testimony, could be used in a subsequent state or federal criminal proceeding." *United States v.*
8   *Balsys*, 524 U.S. 666, 672 (1998) (citing *Kastigar v. United States*, 406 U.S. 441, 444–45 (1972)).
9   "Criminal proceeding," as the Supreme Court noted in *Balsys*, does not include a prosecution
10  initiated by a foreign sovereign, *id.* at 674; accordingly, one cannot invoke a Fifth Amendment
11  privilege if its only basis is a "real and substantial" fear of foreign prosecution, *id.* at 700.
12         In *Balsys*, the plaintiff declined to testify at a deposition in response to a DOJ
13  subpoena because of a purported fear of foreign prosecution. *Id.* at 669. The Second Circuit
14  approved the plaintiff's assertion, holding a witness with a real and substantial fear of prosecution
15  by a foreign country may assert a Fifth Amendment privilege to avoid giving testimony in a
16  domestic proceeding, even if the witness has no valid fear of a criminal prosecution in this
17  country. *Id.* at 670–71. In reversing the Second Circuit, the Supreme Court held to the contrary,
18  that the "concern with foreign prosecution is beyond the scope of the Self–Incrimination Clause."
19  *Id.* at 669. Reading the Fifth Amendment in context, taking into account the privilege against
20  self-incrimination, the Supreme Court concluded the privilege applied only in the face of the
21  government obligated to recognize such a right, namely the United States, and not a foreign
22  government. *Id.* at 673–74. The plaintiff's assertion therefore could not stand. *Id.* at 700.
23         The Supreme Court did, however, articulate a narrowly drawn circumstance in
24  which one could invoke the Fifth Amendment privilege based on fear of foreign prosecution:

> This is not to say that cooperative conduct between the United States and foreign nations could not develop to a point at which a claim could be made for recognizing fear of foreign prosecution under the Self–Incrimination Clause as traditionally understood. If it could be said that the United States and its allies had enacted substantially similar criminal codes aimed at prosecuting offenses of international character, and if it could be shown that the United

7

> States was granting immunity from domestic prosecution for the purpose of obtaining evidence to be delivered to other nations as prosecutors of a crime common to both countries, then an argument could be made that the Fifth Amendment should apply based on fear of foreign prosecution simply because that prosecution was not fairly characterized as distinctly 'foreign.' The point would be that the prosecution was as much on behalf of the United States as of the prosecuting nation, so that the division of labor between evidence gatherer and prosecutor made one nation the agent of the other, rendering fear of foreign prosecution tantamount to fear of a criminal case brought by the Government itself.

*Id.* at 698–99. Because the plaintiff's case in *Balsys* did not fit within the exception, the plaintiff could not invoke the privilege despite his fear of foreign prosecution. *Id.* at 700. The Court reversed the Second Circuit and remanded the case for further proceedings consistent with its opinion. *Id.*

Relying on *Balsys*, a sister court recently concluded a "pending Italian criminal investigation" could not justify a witness's invocation of the Fifth Amendment privilege in a domestic civil case in which a plaintiff sued the witness's company for a breach of contract. *Prime Media Grp., LLC v. Acer Am. Corp.*, No. 12–05020, 2015 WL 527836, at *3 (N.D. Cal. Feb. 6, 2015). That decision aligns with the Ninth Circuit's unpublished but persuasive opinion in *Childs*, in which the court concluded a plaintiff challenging his pending extradition on a Mexican arrest warrant could not invoke the privilege against self-incrimination in the face of an American law enforcement official's interrogation that related "solely to a foreign prosecution." *Childs v. Stafford*, 551 F. App'x 353, 354 (9th Cir. 2014) (citing *Balsys*, 524 U.S. at 669).[4]

Here, Salyer's Fifth Amendment assertion rests solely on his fear of prosecution by Andorran public authorities. Salyer Opp'n Ex. 1 at 6. While the DOJ letter sent on Andorra's behalf raises the possibility of a partnership between the United States and Andorra, this possibility is mere speculation in the absence of any evidence that the United States and Andorran public authorities are working together in the Andorran investigation. Salyer has not shown his

---

[4] The Ninth Circuit's holding of course is not binding on this court. *See* Ninth Circuit Rule 36–3; *Johnson v. Nevada* ex rel. *Bd. of Prison Comm'rs*, No. 11–00487, 2013 WL 5428423, at *7 (D. Nev. Sept. 26, 2013) (under Ninth Circuit Rule 36–3, unpublished Ninth Circuit opinions have "only persuasive rather than authoritative or precedential value"); *see also Gray v. Astrue*, No. 11–294, 2012 WL 4097762, at *9 (D. Idaho Sept. 17, 2012) (same).

fear of foreign prosecution is tantamount "to fear of a criminal case brought by the Government itself." *Balsys*, 524 U.S. at 700. Salyer's fear does not preclude reopening discovery.

### b) Custodial Confinement

Salyer also contends discovery should be precluded because he is in the custody of the U.S. Bureau of Prisons in community confinement. Salyer Opp'n at 1–2. Salyer cites no authority suggesting discovery is precluded under these circumstances, and the applicable authority suggests otherwise. Under Federal Rule of Civil Procedure 30(a)(2)(b), the deposition of a deponent who is confined may be taken, albeit with leave of court.[5] Leave must be granted to the extent consistent with Rule 26(b)(1) and (2). Fed. R. Civ. P. 30(a)(2). Rule 26 governs the scope and limits of discovery, and states in pertinent part that

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26 governs the limitations on the "frequency and extent" of discovery, and states "the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30." Fed. R. Civ. P. 26(b)(2). The Rule also states in part,

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

---

[5] Rule 30(a)(2) states in relevant part:

(a) When a Deposition May Be Taken

. . .

(2) With Leave. A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2):

. . .

(B) if the deponent is confined in prison.

9

>(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
>(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
>(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

*Id.* As long as the court approves a party's request, discovery may be taken from an imprisoned person. *See id.* 30(a)(2)(b); *cf. Abedi v. Butler*, No. 06–0991, 2009 WL 981664, at *12 (E.D. Cal. Apr. 10, 2009) (denying plaintiff inmate's motion to vacate defendants' notice to depose inmate in prison); *see also Griffin v. Johnson*, No. 13-01599, 2016 WL 4764670, at *1 (E.D. Cal. Sept. 12, 2016) (granting defendants' leave to take plaintiff inmate's deposition at correctional institution as request did not appear to exceed the limitations set forth in Rule 26(b)(2)).

Here, Morning Star moves to reopen discovery for the limited purpose of preparing for trial by taking Salyer's deposition, propounding one set each of interrogatories, requests for admission and document requests, and engaging in appropriate follow-up discovery if necessary. Salyer is a key defendant in this case, and Morning Star's requests are directly related to its claims against Salyer. The discovery sought does not appear to exceed any limitations set forth in Rule 26(b)(1) or (2). Salyer's custodial status, if he remains in custody, does not preclude the taking of this discovery.

C. <u>Ingomar's and Los Gatos' Opposition</u>

As noted above, Ingomar and Los Gatos contend no good cause exists to reopen discovery, Morning Star does not point to any evidence that would be uncovered in discovery, and further discovery would be prejudicial in that additional discovery would "waste more resources." Joint Opp'n at 2–7. In reply, Morning Star contends it was not the only party to pursue restitution proceedings against Salyer, and thereby should not be penalized for the time it took to resolve these proceedings on the merits. Reply at 6. Further, Morning Star contends reopening discovery will not cause Ingomar or Los Gatos any prejudice, and in any event, is necessary to prepare for trial against Salyer, who has not moved for summary judgment against Morning Star. *Id.* at 8–9.

1. Legal Standards

The court will modify dates set forth in a scheduling order only upon a showing of good cause by the moving party. Fed. R. Civ. P. 16(b); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). The "good cause" standard also applies to requests to reopen discovery. *See, e.g., Sheridan v. Reinke*, 611 F. App'x 381, 384 (9th Cir. 2015) (applying *Johnson* "good cause" requirement to motions to reopen discovery); *Yeager v. Yeager*, No. 06-001196, 2009 WL 1159175, at *2 (E.D. Cal. Apr. 29, 2009) (a party must show "good cause" to reopen discovery); *United States v. $100,348.00 U.S. Currency*, 157 F. Supp. 2d 1110, 1119 (C.D. Cal. 2001) (concluding "good cause" must exists to reopen discovery). In determining whether good cause exists to reopen discovery, courts may consider a variety of factors such as:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995), *judgment vacated on other grounds by Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 952 (1997). The primary factor considered in a good cause determination is whether the moving party was diligent in its attempts to complete discovery in a timely manner. *Johnson*, 975 F.2d at 609. If that party was not diligent, the inquiry should end and the request should be denied. *Id.* The decision to reopen discovery is one of "discretion." *Schumer*, 63 F.3d at 1526; *see also Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987) ("Whether to extend or reopen discovery is committed to the sound discretion of the trial court and its decision will not be overturned on appeal absent abuse of that discretion.").

2. Application

    a) Factor Four—Diligence Favors Morning Star

Focusing primarily on the most important consideration, Morning Star's diligence, it was apparent from the beginning of this case that Morning Star would be hampered in

conducting discovery with Salyer, the key witnesses, because of the pending restitution proceeding in the related criminal matter. Scheduling Order at 2. Ingomar and Los Gatos contend Morning Star was not diligent because it did not "even attempt to depose Salyer before discovery closed." Mot. at 6. But here, any efforts to conduct discovery against Salyer would have been futile. *See Campbell v. Gerrans*, 592 F.2d 1054, 1057 (9th Cir. 1979) (concluding the privilege against self-incrimination can justify the refusal to respond to discovery requests such as interrogatories). In light of the particular circumstances of this case, in which Morning Star notified the court from the beginning Salyer would not participate in discovery pending resolution of restitution proceedings against Salyer, no further effort was needed to demonstrate Morning Star's diligence.

Further, Morning Star promptly moved to modify the scheduling order within two days after Salyer belatedly notified the court of the completion of restitution proceedings. *See* ECF Nos. 297, 298; *see also United States v. Salyer*, ECF No. 685. As soon as Salyer notified the court, Morning Star promptly filed its motion to reopen discovery. Accordingly, Morning Star has been diligent.

b)    <u>Factors One, Three, Five, and Six Also Favor Morning Star</u>

Applying the other *Schumer* factors, factor one also favors Morning Star because the current motions for summary judgment are pending, and no trial date has yet been set. Factor three favors Morning Star because defendants show no prejudice should the court reopen discovery in preparation for trial, as long as discovery reopens once the court issues its order on summary judgment. Defendants simply will "have to engage in the normal discovery process that would have taken place if, at the start of his case," Salyer had not asserted his Fifth Amendment privilege. *Perkins v. Contra Costa Cty. Sheriff's Dep't J-Team*, No. 07–02013 CW, 2010 WL 539260, at *3 (N.D. Cal. Feb. 9, 2010). While defendants may be somewhat inconvenienced if the court does not grant them summary judgment, "it is not prejudicial for all parties to be in possession of the relevant evidence." *Id.* In light of the court's denial of Morning Star's request to reopen discovery to supplement the record on summary judgment, defendants will not suffer additional delay or expense in connection with the pending motions.

Factor five also favors Morning Star.  Morning Star's main contention is that Salyer, Ingomar, and Los Gatos participated in a conspiracy that led to Morning Star's financial injury.  *See generally* Pls.' Opp'n to Ingomar's Mot. Summ. J.; Pls.' Opp'n to Los Gatos' Mot. Summ. J.  Without adequate discovery with respect to one of the alleged conspiracy members, who is alleged to be a ringleader of the entire conspiracy, *see* Pls.' Opp'n to Ingomar's Mot. Summ. J. at 8; Pls.' Opp'n to Los Gatos Mot. Summ. J. at 9, Morning Star would be at an "insurmountable disadvantage at trial." *Perkins*, 2010 WL 539260, at *2.  Finally, factor six also favors Morning Star, for Salyer's deposition testimony and written discovery responses regarding his perception of the events at issue in this suit are undoubtedly relevant to Morning Star's case given Salyer's key role as alleged.

        c)      <u>Factor Two Favors Ingomar and Los Gatos</u>

Only factor two favors defendants, for they oppose Morning Star's request to reopen discovery.

        d)      <u>Conclusion</u>

On balance, the court finds Morning Star has shown good cause to reopen discovery for the limited purpose of preparing for trial.  Accordingly, the court GRANTS Morning Star's request, subject to the reopening of discovery upon the court's issuance of its order on the pending motions for summary judgment.

III.    <u>CONCLUSION</u>

The court GRANTS Morning Star's motion to reopen discovery to support preparation for trial, but DENIES Morning Star's motion to reopen discovery to supplement the record before the court on the pending motions for summary judgment.

Discovery is reopened as described in this order with a cutoff date of 180 days from the date of the court's filing of its order on summary judgment, for the limited purpose of taking Salyer's deposition, propounding one set each of interrogatories, requests for admission, document requests, and appropriate follow-up discovery if necessary.

1       If Salyer remains or is confined in any manner by the U.S. Bureau of Prisons and
2  any party requires an order of this court to secure the discovery ordered here, that party shall
3  promptly seek such an order from the magistrate judge assigned to this case.
4       IT IS SO ORDERED.
5   DATED: January 10, 2017.

_____
UNITED STATES DISTRICT JUDGE